[Civ. No. 31085. First Dist., Div. One. Nov. 2, 1973.]

FLORENCE MARSHALL, Plaintiff and Appellant, v.
UNITED AIRLINES, Defendant and Respondent.

## COUNSEL

Donald P. McCullum and Charles O. Triebel, Jr., for Plaintiff and Appellant.

Nagle, Vale, McDowall & Cotter, Vernon V. Vale and John G. Schwartz for Defendant and Respondent.

## OPINION

ELKINGTON, J. — Plaintiff Florence Marshall commenced an action against United Airlines (hereafter United), San Francisco-Oakland Helicopter Airlines (hereafter SFO Airlines), and the City and County of San Francisco (hereafter the City) for damages for personal injuries. Summary judgment was entered against her in favor of United. Her appeal is from that judgment.

In the summary judgment proceedings, plaintiff's declaration established the following. For the sum of $239.40, she purchased a ticket from United for air passage from Berkeley, California, to New York and return. It was provided that on the return trip she would travel on an airplane of United to the City's airport in San Mateo County where she was to take an SFO Airlines helicopter to Berkeley. On her return trip she departed from United's airplane on the landing field and entered the City's airport build-

ing. She then walked along corridors toward the SFO Airlines' facility a considerable distance away. She came to a point where an escalator was not working so she started down the stairs. "[S]he had made two or three steps down when [her] left shoe caught on the metal tread edging of the step causing [her] to fall down the stairs injuring [her] body, left arm, shoulder and ankle." Her declaration did not state whether the City, or United, or SFO Airlines, or any, or all of them, had control of the airport building area where she fell. Nor did it indicate that the relation between United and SFO Airlines was other than that of two independent carriers where one, for the convenience of the other and of the passenger, sells the ticket or tickets for the through passage on both carriers.

The declaration of United filed in support of its motion disclosed that the area of the airport where the accident occurred "was not used at that time by United Airlines nor leased by it nor owned by it nor maintained or controlled by it."

Our function is to determine whether a triable issue of fact is made apparent from the declaration of the parties, in the light of the pleadings. In our inquiry the declarations are to be construed with all intendments in favor of the plaintiff, Florence Marshall. (*Desny* v. *Wilder,* 46 Cal.2d 715, 725-726 [299 P.2d 257]; *Avey* v. *County of Santa Clara,* 257 Cal.App.2d 708, 711 [65 Cal.Rptr. 181].)

The first question may be stated as follows: Does a common carrier airline company have a statutory or common law duty to a passenger to exercise care in the maintenance of an airport building area, over which it has no ownership or right of control, but which must be traversed by the passenger when changing planes to an independent connecting airline, passage on which has been arranged for by, and the fare for which has been paid to, the first airline as agent for the second.

We first consider plaintiff's preliminary contention that United owed her the "highest degree of care" in the maintenance of the stairway on which she fell.

■ It is, of course, the rule that a carrier owes its passengers the highest degree of care. (See *Acosta* v. *Southern Cal. Rapid Transit Dist.,* 2 Cal.3d 19, 27 [84 Cal.Rptr. 184, 465 P.2d 72].) But this rule applies while the passengers are *in transitu,* and until they have safely departed from the carrier's vehicle. It was said in *Falls* v. *San Francisco etc. R.R. Co.,* 97 Cal. 114, 119 [31 P. 901], that: " 'The passenger while in actual progress upon his journey is exposed to countless hazards [and] gives himself wholly in charge of the carrier. . . . But a rule properly ceases with the reason

for it; therefore, as a passenger's entrance to the carrier's station is characterized by none of the hazards incident to the journey itself, the rigor of the rule above announced [the rule of highest degree of care] is justly relaxed, in that at such a time and place the carrier is bound to exercise only a *reasonable degree of care* for the protection of [its] passengers.' " (Italics added.) In *Robson* v. *Union Pacific R.R. Co.,* 70 Cal.App.2d 759, 761 [161 P.2d 821], the court stated: " 'The care required of a carrier for the protection of a passenger on its premises involves *reasonable care* to provide and maintain safe and adequate stations, platforms, walks, steps, and landings for use in waiting for, approaching, and leaving trains or other means of conveyance in which the transportation is to be, or has been, furnished; . . ." (Italics added.) To the same effect see also *Lilley* v. *Key System Transit Lines,* 136 Cal.App.2d 737, 740 [289 P.2d 517]; *Dayton* v. *Yellow Cab Co.,* 85 Cal.App.2d 740, 743 [193 P.2d 959]; *Greenleaf* v. *Briggs,* 78 Cal.App.2d 720, 724 [178 P.2d 459]; *Sanchez* v. *Pacific Auto Stages,* 116 Cal.App. 392, 396 [2 P.2d 845]; *Sellars* v. *Southern Pac. Co.,* 33 Cal.App. 701, 705-706 [166 P. 599].

The qualification of this rule should be stressed. The " 'duty [to exercise the highest degree of care] ends when the passenger is discharged into a relatively safe space, not merely that he alights safely from the [carrier's vehicle] if he is discharged into a dangerous area.' " (*Riggins* v. *Pacific Greyhound Lines,* 203 Cal.App.2d 125, 128 [21 Cal.Rptr. 336]; *Parker* v. *City & County of San Francisco,* 158 Cal.App.2d 597, 603 [323 P.2d 108].) And quoting earlier authority, the court in *Brandelius* v. *City & County of S.F.,* 47 Cal.2d 729, 735 [306 P.2d 432], stated that: " '[U]ntil the passenger reaches a place outside the sphere of any activity of the carrier which might reasonably constitute a mobile or animated hazard to the passenger, the rule of utmost care and diligence . . . still applies.' " The moving vehicles and the jet and propeller air blasts of an airline's landing area rather clearly present a "mobile or animated hazard" to an arriving or departing passenger. The rule of "highest degree of care" will also apply when the passenger enters and until he leaves that locality. Such an area is ordinarily attended and closely observed by the airline's personnel; it may reasonably be assumed that they have notice of, and are enabled to correct or warn the passenger of, any dangerous condition at that part of the landing field.

It follows that the duty of care of United toward plaintiff, if any duty of care was owed, at the time and place and under the circumstances of her accident, was no greater than that of ordinary or reasonable care.

We now consider whether United owed plaintiff *any* duty of care in the maintenance of the allegedly defective stairway.

As pointed out, United's uncontested declaration established that the stairway area, concededly a considerable distance from where plaintiff had entered the airport building, "was not used at that time by United Airlines nor leased by it nor owned by it nor maintained or controlled by it." Thus we are not concerned with an airport, or airport area, owned or leased by several or many airline companies, and over which each has some measure or right of control.

Liability for the negligent maintenance of property arises from the rule expressed by Civil Code section 1714 stating, as relevant, "Everyone is responsible, . . . for an injury occasioned to another by his want of ordinary care or skill in the management of his property . . . ." (See *Rowland v. Christian,* 69 Cal.2d 108, 111-112 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].) ■ This responsibility, of course, extends not only to the owner, but also to the occupant who has the right of control of the property. (*Low* v. *City of Sacramento,* 7 Cal.App.3d 826, 831 [87 Cal. Rptr. 173].) The "crucial element [of liability for the dangerous condition of property] is control. . . ." (*Schwartz* v. *Helms Bakery Limited,* 67 Cal. 2d 232, 239 [60 Cal.Rptr. 510, 438 P.2d 68].) In the absence of agreement or other special circumstances, there can be no duty to maintain property, and hence no liability for its negligent maintenance, where there is no ownership or right of control or management of the property. (See *Copfer* v. *Golden,* 135 Cal.App.2d 623, 633-634 [288 P.2d 90].)

Since United was not the owner or lessee of, and had no right of control over, the stairway which caused plaintiff's injuries it follows that it was under no duty to maintain that instrumentality.

We have considered the several cases relied upon by plaintiff on the instant question.

In *Philadelphia, B. & W. R. Co.* v. *McGugan,* 102 Md. 270 [62 A. 752], the passenger while changing trains was injured by the dangerous condition of an area *owned and controlled* by the carrier against which judgment was entered and affirmed. Likewise, the successful plaintiff in *Ortiz* v. *Greyhound Corporation,* 275 F.2d 770, was injured on premises *owned and under the control* of the defendant carrier. The accident of *Garrett* v. *American Airlines, Inc.,* 332 F.2d 939, occurred (p. 941 [3 A.L.R.3d 930]) "in a small, 30 x 40 feet enclosed lounge area under lease to the [defendant] carrier"; and the plaintiff's injuries resulted, not from the defective condition of the carrier's leased property, but from the negligent

act of a fellow traveler which the carrier might reasonably have anticipated, and prohibited or warned against. In *Bruno* v. *Vernon Park Realty,* 2 App. Div.2d 770 [154 N.Y.S.2d 587, 589], the "jury could have found, on the evidence adduced, that [defendant railroad company] had permission from the owner to use the [accident-causing defective stairway] as part of an approach to its station *and could also have inferred that [the railroad company] had permission to maintain it and keep it in repair. . . .*" (Italics added.) The *inference* appeared to arise from the fact that for many years the stairway, owned by a realty company, was "constantly and notoriously used by the [one railroad's] passengers as a means of approach." In the case at bench the evidence affords no inference that United had permission to maintain the portion of the City's airport where plaintiff fell. And *Crowell* v. *Eastern Air Lines,* 240 N.C. 20 [81 S.E.2d 178], held, as have we, that it is the duty of an airline to furnish a "reasonably safe passageway" to a passenger traversing the critical area from the carrier's waiting room to its airplane, regardless of ownership or right of occupancy over that area.

None of the foregoing cases lends aid to plaintiff's instant contention. But *City of Knoxville, Tenn.* v. *Bailey,* 222 F.2d 520 does. There the plaintiff passenger fell on a negligently maintained stairway or landing solely owned and controlled by the City of Knoxville, and which was the public means of entering that city's airport building. Delta Air Lines, with others, by contract with the city, used the airport facilities for the landing and taking off of its airplanes. Affirming a judgment for the plaintiff against Delta Air Lines, the court concluded (p. 527) that the "best considered rule is that a common carrier should not be relieved from liability for injury to its passengers, resulting from the unsafe condition of the station premises which they must use in order to board its trains or airplanes, by reason of the mere fact that such premises are under control of another company or a municipality with which the carrier has contracted for terminal facilities. . . ." We find the rule announced by *City of Knoxville, Tenn.* v. *Bailey* to be contrary to settled law of California and generally, to authority elsewhere. To the extent that it is inconsistent with the law of this state we are obliged to, and do, reject it. It is notable that in *City of Knoxville, Tenn.* v. *Bailey,* unlike the case at bench, the dangerous defect of the airport premises was well known, or reasonably should have been well known, to Delta Air Lines.

A related question appears. May it reasonably be inferred that United had notice of the defect in the City's airport stairway, and if so, was it under a duty to warn plaintiff?

If the defect of the airport stairs which gave rise to plaintiff's action was hidden, then of course no inference of United's discovery and knowledge of the condition in the exercise of ordinary care could reasonably be drawn. If patent, then the defect was equally observable to plaintiff and United.

■ It is established law, at least in the exercise of ordinary care, that one is under no duty to warn another of a danger equally obvious to both. (*Mautino* v. *Sutter Hospital Assn.,* 211 Cal. 556, 561 [296 P.2d 76]; *Goldstein* v. *Healy,* 187 Cal. 206, 211 [201 P.2d 462]; *Shanley* v. *American Olive Co.,* 185 Cal. 552, 555 [197 P. 793]; *Morales* v. *L. W. Blinn Lumber Co.,* 9 Cal.App.2d 292, 295 [49 P.2d 621]; *Ambrose* v. *Allen,* 113 Cal. App. 107, 113 [298 P. 169].)

The remaining question: Did United, expressly or impliedly, contract with plaintiff to furnish non-negligent passage from New York until her departure from the SFO Airlines' helicopter at Berkeley?

The declarations of the parties make out no *express* contract for such non-negligent through passage to Berkeley. Plaintiff makes no contention that they do.

We find no California authority on the question whether, on facts similar to those of the case before us, an *implied* contract for non-negligent passage to the passenger's ultimate destination arises. But elsewhere throughout the nation the rule seems well established.

Summarizing broad authority, 13 Corpus Juris Secundum (Carriers, § 702) states: "A carrier who sells a ticket for transportation of a passenger over its own and connecting lines is in general liable only for injuries due to the torts of its own employees. . . ."

*Feig* v. *American Airlines,* 167 F.Supp. 843, 844, an airline case, held: "In the absence of a special contract to the contrary, the carrier's responsibility is discharged by safe carriage over its own lines." The court in *Seibels* v. *Northern Cent. Ry. Co.,* 80 S.C. 133 [61 S.E. 435, 437] (overruled on other grounds, *Martin* v. *One Chevrolet Truck,* 207 S.C. 87 [34 S.E.2d 474, 477]) stated: "The mere sale of a through ticket over two or more connecting lines is not evidence of a joint contract between such roads as to make one liable for the fault of the other. . . ." Following the same rule, it was said in *Brook* v. *Brooklyn Union Elevated R. Co.,* 148 App. Div. 668 [133 N.Y.S. 253, 254]: "[A] carrier selling a coupon ticket for transportation over its own and connecting lines assumes only liability for accidents occurring upon its own lines, and assumes no extraterminal liability for any accident or default upon any road except its own. . . ."

Other cases to the same effect follow: *Ephraim* v. *Safeway Trails, Inc.,* 341 F.2d 815, 819; *Spears* v. *Transcontinental Bus System,* 226 F.2d 94, 97 [cert. den., 350 U.S. 950 (100 L.Ed. 828, 76 S.Ct. 326)]; *Louisville & N.R. Co.* v. *Webb* (Ky.) 248 S.W.2d 429, 430; *Felder* v. *Railroad Company,* 21 S.C. 35, 39; *Glaser* v. *Pennsylvania R.R.,* 82 N.J. Super. 16 [196 A.2d 539, 542].

On the instant issue the only authority tendered by plaintiff is certain language of *Wheeler* v. *S.F. & A. Railroad Co.,* 31 Cal. 46, 53-54, as follows: " 'The business of common carriers between the different places is ultimately interwoven, branching off into innumerable channels. And it is often of great public convenience, if not of absolute necessity, that several companies should combine their operations, and thus transport passengers and merchandise by a mutual arrangement over all their lines, upon one contract, for one price. In such cases each is held liable for the whole distance. [Citations.] And we think a company may be bound, even without any actual arrangement with the connecting lines, *if, by their agents, they hold themselves out to the public as common carriers to a place beyond the limits of their own road.*' "

In *Wheeler* it was established that the railroad company defendant was, and held itself out to be, a common carrier of passengers through Alameda County across San Francisco Bay to the City of San Francisco. Wheeler boarded one of its cars in Alameda County for passage to the City of San Francisco. At the Alameda County shoreline he transferred to a connecting "steamer," owned by or under the control of the railroad company, from which for some reason he was forcibly ejected after which the boat with other passengers proceeded on its way. In an action brought by Wheeler for damages, the railroad company argued that although it had control of the steamer and had held itself out to be a common carrier over the whole of the route to San Francisco, "it had no legal capacity to become a common carrier by steamboat." It was in response to that argument that the court used the above quoted language, " '. . . we think a company may be bound, even without any actual arrangement with the connecting lines, *if, by their agents, they hold themselves out to the public as common carriers to a place beyond the limits of their own road.*' "

We observe that plaintiff's declaration asserts, "I was scheduled to return by United Airlines to San Francisco International Airport for further transport to SFO-Helicopter Airlines to return to Berkeley, California."

It thus appears that unlike *Wheeler,* in the case at bench the carrier, United, did not hold itself out as a common carrier to a place beyond the limits of its own operation.

We accordingly hold, as a matter of law, that the evidence disclosed at the summary judgment proceedings established no *implied* contract of United for non-negligent passage of plaintiff after she had safely departed from its airplane at the City's airport.

For all these reasons the summary judgment in favor of United must be affirmed.

The summary judgment in favor of United Airlines is affirmed.

Molinari, P. J., and Sims, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 27, 1973.