680 F.2d 1257
 David ROOKARD and Fiona Rookard, individually, and as
husband and wife, Plaintiffs-Appellants,
v.
MEXICOACH, a California Corporation; Transportes Del
Pacifico S. A. de C. V.; Autotransportes Tres
Estrellas De Oro, Defendants-Appellees.
 No. 79-3592.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 5, 1982.
Decided July 6, 1982.
As Amended July 28, 1982.
 
 1
 Gary L. Stuart, Jennings, Strouss & Salmon, Phoenix, Ariz., for plaintiffs-appellants.
 
 
 2
 J. Tim Konold, Higgs, Fletcher & Mack, San Diego, Cal., for defendants-appellees.
 
 
 3
 Appeal from the United States District Court for the Southern District of California.
 
 
 4
 Before BROWNING and FERGUSON, Circuit Judges, and WILLIAMS*, District Judge.
 
 SPENCER WILLIAMS, District Judge:
 
 5
 David and Fiona Rookard appeal from a district court order granting summary judgment for defendant-appellee Mexicoach in Appellants' action to recover for personal injuries sustained in a catastrophic autobus accident which killed thirty persons, injured scores more, in Mexico on March 21, 1978. Appellants seek recovery as well against the two Mexican bus companies involved in that crash based on a default judgment entered against them. Their chances of a substantial recovery on the defaults, however, are effectively vitiated by a Mexican law limiting the liability of common carriers for their torts. We have jurisdiction of this appeal under 28 U.S.C. § 2107. Because we find that triable issues of material fact exist, we reverse and remand for trial.I.
 
 FACTS
 
 6
 The Rookards were on tour through North America in early 1978. While visiting San Diego, California they became interested in traveling through Mexico. They approached Mexicoach, an American bus company which holds itself out as an agent and a carrier for travel into Mexico, and purchased tickets for passage to Los Mochis, Mexico. Mexicoach's ticket office is located in the Amtrak station in San Diego.
 
 
 7
 The Rookards, whose accents distinctly identify them as foreigners, allege that Mexicoach affirmatively vouched for their safe passage to Los Mochis. They were not told the name of the connecting Mexican bus carrier (Del Pacifico), but only that Mexicoach "could and would sell us the necessary tickets and make all arrangements for us to travel by motor bus from San Diego to Los Mochis." For $22.10 (10% of which was retained by Mexicoach) they were issued tickets which contained disclaimers, printed in Spanish, regarding Mexican limitations on tortfeasor liability and other insurance problems. Mexicoach did not provide a translation, nor did they warn appellants of certain other risks inherent in bus travel through Mexico.
 
 
 8
 In San Diego, the Rookards boarded a Mexicoach bus which safely transported them to Mexicoach's terminal in Tijuana. A Mexicoach commissioned taxi-cab transported them to the Del Pacifico terminal, where they boarded a Del Pacifico bus for the remainder of their never-completed journey. The accident apparently occurred as a result of the gross negligence of the Del Pacifico driver. The Rookards sustained severe injuries. Mr. Rookard's injuries are of a permanent nature. Contrary to Mexican law, the vehicle carried no insurance.
 
 
 9
 The Rookards are English subjects and entitled to Federal jurisdiction pursuant to 28 U.S.C. § 1332(a)(2). Mexicoach is a California corporation. As appellants purchased their tickets from Mexicoach in San Diego, and began their journey there in a Mexicoach vehicle, California law controls the substantive issues of this case. Erie Ry. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).
 
 II.
 
 10
 Appellants' theory of recovery sounds jointly in tort and agency law. They claim that Mexicoach, as a common carrier, violated its duty of care to them by failing to warn them of the dangers inherent in travel by Mexican bus and by failing to discharge them into safe surroundings (i.e., selecting an unsafe carrier). They also claim that as their "agent" (i.e., as a travel agent on behalf of the traveler) Mexicoach failed to discharge its duty of disclosure, viz. to warn them of certain known dangers such as the statutory tortfeasor liability limitations and poor safety records of Mexican bus companies. Appellants assert, in effect, that Mexicoach had a fiduciary duty which compelled these disclosures, and claim they relied on this trust. In addition, they allege a material misrepresentation regarding the safety of the Del Pacifico operation.
 
 
 11
 Mexicoach moved below for summary judgment, arguing that they were not a general agent or otherwise affiliated with Del Pacifico; that their duty of care to the Rookards ended at their terminal in Tijuana; and that as a mere "ticket agent" there was no duty to warn the Rookards of potential dangers beyond their control. The district court granted the motion on the grounds that the originating carrier has no liability for torts committed by a connecting carrier and that there was no duty to warn. We reverse.
 
 III.
 
 12
 A. Liability of Mexicoach as a Common Carrier
 
 
 13
 Appellants assert that Mexicoach breached its duty as a common carrier to protect its passengers against unreasonable risk or harm from elements not within the control of the carrier.
 
 
 14
 It is clear that common carriers are held to an enhanced standard of care. Calif.Civil Code § 2100[1]; Restatement of Torts (2d), § 314A. A number of courts have held common carriers liable where they discharged their passengers into unsafe surroundings. Hines v. Garrett, 131 Va. 125, 108 S.E. 690 (1921) (female passenger raped when left off in deserted area); Parker v. San Francisco, 158 Cal.App.2d 597, 323 P.2d 108 (1958) (Municipal Railway liable for discharging passenger into unsafe street).
 
 
 15
 But here the Rookards were in fact delivered safely to the Del Pacifico terminal in Tijuana. Their injuries were not sustained until the connecting carrier assumed responsibility. In that case, the rule is clear: "A carrier who sells a ticket for transportation of a passenger over its own and connecting lines is, in general, liable only for injuries due to the torts of its own employees." Marshall v. United Airlines, 35 Cal.App.3d 84, 90, 110 Cal.Rptr. 416, 421 (1973). A common carrier has no liability, per se, for the torts committed by a connecting carrier. Louisville R.R. Co. v. Chatters, 279 U.S. 320, 330, 49 S.Ct. 329, 332, 73 L.Ed. 711 (1929).
 
 
 16
 Appellants next assert liability on the common carrier for failure to warn of known hazards beyond its control. Several cases have held that a carrier does have a duty to warn a passenger of reasonably foreseeable risks. Bullock v. Tamiami Trail Tours, Inc., 266 F.2d 326 (5th Cir. 1959) (duty to warn negro couple of likely assault in South); Fleming v. Delta Airlines, 359 F.Supp. 339 (S.D.N.Y.1973) (airline obliged to warn of potentially disruptive weather). Yet these cases deal with carriers whose passengers were still in their care and control. Similarly, in Tradewind Transportation Co. v. Taylor, 267 F.2d 185, 188 (9th Cir. 1959), cert. denied, 361 U.S. 829, 80 S.Ct. 79, 4 L.Ed.2d 72 (1959), this court observed that a carrier was indeed obliged to warn its passengers of dangerous elements beyond its control, but there too, the carrier's duty of care was a continuing obligation. In Tradewind the tour passengers would re-board the tour-bus after visiting a given site. These cases are simply inapposite to the instant facts.
 
 
 17
 Here the Rookards carrier-passenger relationship with Mexicoach terminated with their safe arrival at the Del Pacifico terminal in Tijuana. Cf. Werndli v. Greyhound Corp., 365 So.2d 177 (Fla.App.1978) (duty to warn extended to reasonably foreseeable dangers in defendant's terminal). A common carrier is held to a higher standard of care, but it is not a fiduciary. We are aware of no cases which support the imposition of liability upon a common carrier for negligent acts of third parties unconnected with the commissioned carriage. Mexicoach is simply not responsible as a common carrier for the torts of subsequent carriers. Chatters, supra, 279 U.S. at 330, 49 S.Ct. at 332.
 
 B. Liability of Mexicoach as Agent
 
 18
 Appellants' agency cause of action is predicated on a duty to warn of dangers posed by succeeding events and offers a greater potential for liability than that available under the common carrier doctrine. Appellees argue that the district court's ruling as to whose agent, if anyone, Mexicoach was is immaterial because the district court "held that plaintiffs were not damaged by the breach of any duty by Mexicoach."
 
 
 19
 This is simply erroneous: the scope of Mexicoach's duty to appellants is defined by the extent of their relationship. Tort analysis requires the court to first establish the relationship of the parties, and their mutual expectations, thereby deriving the scope of the duty owed before it can be considered whether any duties of care were breached.[2]
 
 
 20
 It is undisputed that Mexicoach was an agent. The question is: "Whose agent?" See Bucholtz v. Sirotkin, 74 Misc.2d 180, 343 N.Y.S.2d 438 (1973)[3] (travel agent is the passenger's agent). Either it was the agent of Del Pacifico, or a mere ticket-agent (as appellants urge), or it was the agent of the Rookards.
 
 
 21
 First, if Mexicoach was the agent of Del Pacifico, it has no liability for the torts of its principal. Dorkin v. American Express, 74 Misc.2d 673, 345 N.Y.S.2d 891 (1973).[4] An agent, absent fault on his part, cannot be vicariously liable for the wrongful acts of his principal. See Seigler v. American Surety Co., 151 F.Supp. 556 (N.D.Cal.1957).
 
 
 22
 Second, if Mexicoach was a mere ticket agent, a fortiori, its liability can be no greater than the originating carrier's-who has no liability absent fault. Marshall and Chatters make it clear that "the mere sale of a through ticket over two or more connecting lines ... (will not render the ticketing agent) liable for the fault of the other." Marshall, supra, 35 Cal.App.3d at 90, 110 Cal.Rptr. 416.
 
 
 23
 If, however, Mexicoach was acting as the agent of the Rookards, foreign visitors ignorant of the dangers inherent in Mexican highway travel, the scope of defendant's corresponding duty would be enlarged. It may well encompass a duty to warn.
 
 
 24
 Appellants correctly point out that the question of whether an "agency" existed is a question of fact, for the jury's resolution. Housewright v. Pacific Far East Line, Inc., 229 Cal.App.2d 259, 40 Cal.Rptr. 208, (1964). An agency may be informally created. Id. Here, a strong case[5] can be made for finding such an agency relationship: (1) Mexicoach held itself out to the public as providing information and advice regarding travel in Mexico. (2) Mexicoach's own brochures describe their relationship with customers as "agent for the passengers in all matters relating to ... transportation." (3) Mexicoach's president admitted in his deposition that his company acts on behalf of its passengers with respect to ticketing on Mexican bus lines. (4) The Rookards claim they relied on the trust of Mexicoach as their agent. And, if we assume as we must for purposes of summary judgment, that Mexicoach was acting as travel agent for plaintiffs in arranging passage on Del Pacifico, we must then decide what duties it owed them.
 
 C. Duty to Warn
 
 25
 The facts disclose that the Rookards were not informed of the Mexican statutory limitations on tortfeasor liability, despite Mexicoach's knowledge of this fact. They were not informed of the purportedly poor safety record of Mexican bus companies (although this remains a factual issue). Indeed, Mexicoach's president deposed that he was aware of the hazards of such travel:
 
 
 26
 A: I wouldn't ride on any Mexican bus. My life belongs to my family and-
 
 
 27
 Q: Do you consider that you are taking your life in your hands when you ride a Mexican bus?
 
 
 28
 A: Yes, not because of the bus, because of the drivers. Every driver in Mexico is moody, drinks tequila. If you go second classQ: Do you know, sir, whether Del Pacifico has a better or lesser reputation than any other Mexican bus company?
 
 A: No. (Rath Deposition, p. 60)
 
 29
 Naturally, appellees controvert this view, and indeed Mr. Rath later contradicted his testimony upon cross-examination by his counsel. For the purposes of summary judgment, this court must construe the conflicts in favor of appellants.
 
 
 30
 Moreover, Mexicoach made no efforts to investigate the safety record of Del Pacifico buses. It did not investigate its drivers. It could not even verify that Del Pacifico's service was "First Class." The bus that crashed was operating without proper vehicle plates, "First Class" certification, or the legally required traveler's insurance.
 
 
 31
 Appellants' plea is predictable: If they had known these facts, they would not have traveled on Del Pacifico. Additionally they assert Mexicoach fraudulently misrepresented their safe passage.
 
 
 32
 The remaining question is whether Mexicoach was under a duty to disclose the facts[6] known to it given the totality of circumstances:
 
 
 33
 (1) Limited tortfeasor liability under Mexican law;
 
 
 34
 (2) Tickets for Del Pacifico with disclaimers in Spanish;
 
 
 35
 (3) Knowledge that the Rookards were foreign visitors;
 
 
 36
 (4) Poor safety record of Mexican bus companies; and,
 
 
 37
 (5) Lack of even a de minimis investigation into the safety record of Del Pacifico.
 
 
 38
 Once an agency relationship is found, fiduciary duties of loyalty and full disclosure flow as a consequence. Sierra Pacific Industries v. Carter, 104 Cal.App.3d 579, 163 Cal.Rptr. 764, 766 (1980); Spector v. Miller, 199 Cal.App.2d 87, 18 Cal.Rptr. 426, 431 (1962). The rule in California "charges an agent with the duty of fullest disclosure of all material facts concerning the transaction in question which might affect the principal's decision." St. James Armenian Church v. Kurkjian, 47 Cal.App.3d 547, 552, 121 Cal.Rptr. 214 (1975). See also Calif.Civil Code § 2230; Restatement of Agency (2d) § 381 (1958).[7]
 
 
 39
 The duty of full disclosure in this instance is nothing more than a duty to warn of known dangers. For an agent who serves concurrently as a common carrier, the question regarding the existence of a duty to warn has been addressed by the California courts.
 
 
 40
 In Marshall v. United Airlines, supra, plaintiff was injured in a fall in the terminal shortly after departing from defendant's plane. The court made the threshold inquiry: "May it be reasonably inferred that United had notice of the defect in the City's airport stairway, and if so, was it under a duty to warn plaintiff ?" 35 Cal.App.3d at 90, 110 Cal.Rptr. 416. The Marshall court tacitly recognized the duty to warn, but held that defendant had no duty of disclosure in that particular case because "the defect was equally observable to (both) plaintiff and United." Id. accord: Garrett v. American Airlines, Inc., 332 F.2d 939 (5th Cir. 1964) (duty to warn passengers of potential dangers in waiting room).
 
 
 41
 Finally, one commentator has addressed the question as specifically applied to a travel agent's disclosure:
 
 
 42
 It is reasonable to assume there will be some obligation to disclose the existence of significant risks to attend the securing of particular reservations, such as the presence of conditions on certain carriers which are known or should be known by the travel agent to be dangerous. 40 Temple L.Q. 24, 35 (1966).
 
 
 43
 The scope of this duty of disclosure will be limited, naturally, to what is reasonable in any given instance. A travel agent is not an insurer, nor can he be reasonably expected to divine and forewarn of an innumerable litany of tragedies and dangers inherent in foreign travel. Nonetheless, it does not follow that because a travel agent cannot possibly presage all dangers, he should be excused entirely from his fiduciary duties toward his principal to warn of those dangers of which he is aware, or should be aware in the exercise of due care.
 
 
 44
 For example, if for the sake of receiving air fare commissions, an air carrier (or an independent agent) were to book a passenger on a connecting carrier on which 50% of all flights crash, surely it would be negligence for the agent not to disclose this extraordinary risk. All travelers, foreign or not, could reasonably expect to be informed of such risks before booking passage. The duty to warn which we hold may exist in the instant case does not represent an extension of tort liability upon an agent. Rather it results from an exposition of the pre-existing duty of care owed a principal by his agent.
 
 
 45
 Four questions of fact underlie a determination whether a duty to disclose exists: (1) Did an agency relationship exist between Mexicoach and the Rookards? (2) Just how dangerous are Mexican bus lines, particularly Del Pacifico? (3) Was this risk known, or should it have been known in the exercise of due care, by Mexicoach? (4) Was this risk known by the Rookards?
 
 D. Affirmative Misrepresentation
 
 46
 Appellants also allege that Mexicoach affirmatively and falsely represented their safe passage. No agency or special relationship need be proven in order to establish a duty to refrain from making an affirmative misrepresentation. See Tarasoff v. Regents of University of California, 17 Cal.3d 425, 435 n.5, 131 Cal.Rptr. 14, 551 P.2d 334 (1976). Again it cannot be said as a matter of law, the elements of a misrepresentation cause of action were not satisfactorily alleged and supported. See 4 B. Witkin, Summary of California Law, §§ 445-56 (1974).
 
 IV.
 CONCLUSION
 
 47
 Appellants have stated and supported valid causes of action against Mexicoach for breach of a duty to warn of certain known dangers and breach of the duty of care as their travel agent. Also, it cannot be said that Mexicoach, as common carrier and ticket dispenser did not breach its duty to refrain from affirmative misrepresentations. Triable issues of fact were presented. Accordingly, we hold that summary judgment was improvidently granted.
 
 
 48
 REVERSED AND REMANDED.
 
 
 
 *
 Honorable Spencer Williams, United States District Judge, Northern District of California, sitting by designation
 
 
 [1]
 California Civil Code, Section 2100 provides:
 General Duties of Carrier. A Carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill. (Enacted 1872.)
 See also, Acosta v. Southern California Rapid Transit District, 2 Cal.3d 19, 27, 84 Cal.Rptr. 184, 465 P.2d 72 (1970).
 
 
 [2]
 See, e.g., W. Prosser, Law of Torts (4th Ed. 1971) § 53, pp. 324-326; Wintipid, Duty in Tortious Negligence, 34 Col.L.Rev. 41 (1934)
 
 
 [3]
 Aff'd, 80 Misc.2d 333, 363 N.Y.S.2d 415 (1974). In Ostrander v. Billie Holm's Village Travel, Inc., 87 Misc.2d 1049, 386 N.Y.S.2d 597 (1976), the court observed that the travel agent is frequently the agent of the passengers, and its duties of care should reflect this relationship
 
 
 [4]
 Aff'd, 43 A.D.2d 877, 351 N.Y.S.2d 190 (1974)
 
 
 [5]
 The factual assertions which follow are not "findings of fact" but rather reasonable inferences from the record from which a jury might find that an "agency" existed between the Rookards and Mexicoach. These remain triable issues
 
 
 [6]
 See fn. 5; precisely what facts were known, or should have been known, to Mexicoach is a jury question
 
 
 [7]
 The Restatement of Agency (2d) § 381 (1958) provides for full disclosure to a principal:
 Unless otherwise agreed, an agent is subject to a duty to use reasonable efforts to give his principal information which is relevant to the affairs entrusted to him and which, as the agent has noticed, the principal would desire to have and which can be communicated without violating a superior duty to a third person.
 Similarly, under the California Civil Code, §§ 2020, 2322(3), 2800, full disclosure of all material facts to a principal is required so that an advantage is not gained over the principal by misrepresentation or concealment of any kind.