[No. B011700. Second Dist., Div. Four. Sept. 12, 1985.]

DENNIS ALLAN McCOLLUM,
Plaintiff, Cross-defendant and Appellant, v.
FRIENDLY HILLS TRAVEL CENTER et al.,
Defendants, Cross-complainants and Respondents.

## Counsel

Garber, Sokoloff & Van Dyke and Gerald Sokoloff for Plaintiff, Cross-defendant and Appellant.

Stephen J. Sundvold and Correse A. Cunningham for Defendants, Cross-complainants and Respondents.

## Opinion

McCLOSKY, J.—Plaintiff Dennis Allan McCollum appeals from "the Judgment Granting the Motion for Summary Judgment in favor of FRIENDLY HILLS TRAVEL AGENCY [*sic*] and TERRI TAPPEY made on or about January 17, 1985, and the dismissal of the complaint and from all judgments or orders which have been or will be entered in favor of defendants based on said Motion for Summary Judgment."[1]

### FACTS

In his second amended complaint appellant pleads three unlabeled causes of action against respondents. The first cause of action alleges negligence, the second alleges a breach of express warranty and the third alleges a breach of an implied warranty. In all three causes of action appellant seeks redress for injuries he sustained when he fell while water-skiing due to the allegedly negligent manner the "water skiing aspect of his vacation was maintained." Respondents, while acting in their capacity as travel agents, booked appellant into the hotel where he was injured.

Respondents answered the complaint denying generally its allegations and raising several affirmative defenses. Respondents also cross-complained for comparative contribution. Appellant generally denied the allegations of that cross-complaint.

The respondents filed a motion for summary judgment which appellant opposed. The facts presented in the moving and opposing papers are largely undisputed. For purposes of reviewing the propriety of the trial court's ruling we construe the evidence therein in the manner most favorable to appellant.

---

[1]Appellant has filed an appellant's appendix in lieu of a clerk's transcript. (Cal. Rules of Court, rule 5.1.)

In July of 1981, appellant Dennis McCollum went to Friendly Hills Travel Center to arrange a water-skiing and water sports vacation at Club Med in Cancun, Mexico. Appellant was informed by travel agent Ms. Terri Tappey that the Cancun Club Med was booked for several months. She offered appellant brochures on alternative facilities. Appellant took a number of these brochures home and on his second visit to the agency he asked about the Negril Beach package advertised in one of them. He specifically asked whether or not he would have to take his own water-skiing equipment to the resort. According to the appellant, the agent referred to a thick binder which appellant believed contained additional information beyond that included in the brochure, and Ms. Tappey then told appellant that it would not be necessary for him to bring his own equipment. The appellant also states that the agent made some calls regarding Negril Beach, one of which was placed to the Jamaican Tourist Board, inquiring into vacancies at the hotel.[2]

Shortly thereafter appellant purchased his ticket from the agent. Appellant testified that once in Jamaica he found the hotel had only one pair of skis available for use by the patrons and that this pair was old and in bad repair.[3]

The appellant used the skis three times. He inspected them before each use, and they appeared to him to be worn but safe. The boat which the hotel used for water-skiing had only a driver with no observer.

The third time appellant used the water skis the driver took appellant out of the calm water and into the open sea where the water was rougher. The driver sped up to between 35 and 45 knots per hour. Appellant signaled the driver several times to slow down but to no avail. The driver then made too fast a turn for the prevailing water conditions which caused appellant to fall, hitting "the water hard and twisting [his] neck." Appellant maintains that 22 days after that incident he suffered a stroke as a result of that fall and is now paralyzed on the left side of his body from the stroke. The trial court granted a summary judgment in favor of respondents.

## CONTENTIONS

Appellant raises the following contentions on appeal: (1) "There is a duty owed by a travel agent to the traveler established by the agency relationship between the two parties. Agency is a question of fact for a jury's determi-

---

[2]While Ms. Tappey disputes the content of this conversation for purposes of determining the propriety of the trial court's order, we assume appellant's testimony to be true. (See *Pettus* v. *Standard Cabinet Works* (1967) 249 Cal.App.2d 64, 69 [57 Cal.Rptr. 207].)

[3]The appellant further testified that a sports shop near the hotel had water-skiing equipment available for rent, but that the equipment was in "worse shape than the hotel skis."

nation." (2) "Defendants' fiduciary duty to plaintiff is further established by the civil aeronautics board and the standards of the American Society of Travel Agents to which defendants subscribed." (3) "The duty of a travel agent as an agent of the traveler is a case of first impression in California and it requires delineation analogous to that of a real estate broker as recently set forth in this state." (4) "Defendants made misrepresentations to plaintiff as to the adequacy of the water skiing facilities and these are disputed triable issues of fact as established by contradictions in the testimony of Terri Tappey and Dennis McCollum." (5) "The cases cited by defendants are distinguishable as they impose liability for the acts of others, while in the instant case we are concerned with the liability of defendants for their own acts and omissions." (6) "The exculpatory paragraph entitled 'Responsibility' in the hotel's travel brochure is invalid as a matter of law, and if not, there are factual issues to be decided as to the efficacy of the paragraph." (7) "Travel services do come with express and implied warranties and there is a factual issue as to the warranties in this case." (8) "Dennis McCollum has factually established a cause of action in negligence and has satisfied the requirements of duty, breach of duty, proximate cause and injury."

## DISCUSSION

### I

Appellant's first series of contentions concerns the propriety of the trial court's ruling summarily adjudicating appellant's cause of action for negligence in favor of respondents. The principal question raised by these contentions is the nature and scope of the duty that respondents, as travel agents, owed plaintiff traveler for whom they arranged a vacation. We must determine, as a matter of law, whether respondents breached no duty they owed appellant by informing him that the hotel into which they booked him would provide water skis, thereby making it unnecessary for him to bring his own skis. Appellant claimed that this constituted a breach of duty because he was subsequently injured by the substandard skiing equipment and conditions at the hotel.

"In ruling on a motion for summary judgment, '[t]he determination whether facts have been adduced . . . which present triable issues of fact is to be made in the light of the pleadings.' (*Leasman* v. *Beech Aircraft Corp.* (1975) 48 Cal.App.3d 376, 380 [121 Cal.Rptr. 768]; . . .) However, the court may only examine the pleadings in order to define the issues of which summary judgment disposes. [Citations.]" (*Hooks* v. *Southern Cal. Permanente Medical Group* (1980) 107 Cal.App.3d 435, 442 [165 Cal.Rptr. 741].) " 'The aim of the procedure is to discover . . . whether the parties

possess evidence requiring the weighing procedures of a trial. In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. . . .'" (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 851-852 [94 Cal.Rptr. 785, 484 P.2d 953], quoting *Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].)

■ "A moving defendant must show clearly that plaintiff's action has no merit. If a plaintiff's cause of action could be based on either of two theories, he will not be subject to defeat by summary judgment where the defendant's declarations show only that one of the two theories cannot be established. ■ It is the defendant's burden to rule out *all possible merit.* Only if the declarations of the moving defendant considered in light of the issues raised by the pleadings together with the admissions and affirmative allegations set forth in the pleadings of the plaintiff would, standing alone support the summary judgment motion does the court look to any counter-affidavits and counterdeclarations." (*Residents of Beverly Glen, Inc.* v. *City of Los Angeles* (1973) 34 Cal.App.3d 117, 127 [109 Cal.Rptr. 724]; italics in original.) ■ "[A] motion for summary judgment must be denied if the party opposing the motion presents any facts which give rise to a triable issue [citations]. However, the rule applies only to material issues, i.e., facts which are material to the lawsuit and could change the result one way or the other if resolved in favor of one side or the other." (*Pettus* v. *Standard Cabinet Works, supra,* 249 Cal.App.2d 64, 69.)

■ "[T]he determination that a duty of care exists is an essential pre-condition to liability founded on negligence." (*Hooks* v. *Southern Cal. Permanente Medical Group, supra,* 107 Cal.App.3d at p. 443.) "The determination of duty is primarily a question of law." (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36].) "A duty of care may arise through statute or by contract. Alternatively, a duty may be premised upon the general character of the activity in which the defendant engaged, the relationship between the parties or even the interdependent nature of human society. [Citation.] Whether a duty is owed is simply a shorthand way of phrasing what is ' "the essential question—whether the plaintiff's interests are entitled to legal protection against the defendant's conduct." ' (*Dillon* v. *Legg* (1968) 68 Cal.2d 728, 734 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316], quoting from Prosser, Law of Torts (3d ed. 1964) pp. 332-333. . . .)" (*J'Aire Corp.* v. *Gregory* (1979) 24 Cal.3d 799, 803 [157 Cal.Rptr. 407, 598 P.2d 60].)

In order to determine the scope and nature of the duty respondents owed appellant in the case at bench, we must first decide whether respondents

were acting as agents for appellant, thereby owing him a fiduciary duty. We have been cited to no California state court case discussing the nature of the relationship between a travel agent and a traveler, nor has our independent research revealed any such case.

■ "The question of whether there exists an agency relationship is one of fact [citations], and for the jury to decide unless the evidence is susceptible of but a single inference." (*Dorsic* v. *Kurtin* (1971) 19 Cal.App.3d 226, 237-238 [96 Cal.Rptr. 528].)

■ An agent "is anyone who undertakes to transact some business, or manage some affair, for another, by authority of and on account of the latter, and to render an account of such transactions." (3 Cal.Jur.3d, Agency, § 1, p. 10.) "The chief characteristic of the agency is that of representation, the authority to act for and in the place of the principal for the purpose of bringing him or her into legal relations with third parties. [Citations.]" (*City of Los Angeles* v. *Sherwood* (1978) 85 Cal.App.3d 347, 351 [149 Cal.Rptr. 298].) "The significant test of an agency relationship is the principal's right to control the activities of the agent. [Citations.] It is not essential that the right of control be exercised or that there be actual supervision of the work of the agent; the existence of the right establishes the relationship." (*Stevens* v. *Roman Catholic Bishop of Fresno* (1975) 49 Cal.App.3d 877, 884 [123 Cal.Rptr. 171].)

■ The weight of authority in the United States holds that a travel agent who arranges vacation plans and therefore acts as more than a mere "ticket agent" is a special agent of the traveler for the purposes of that one transaction between the parties. (See *United Airlines, Inc.* v. *Lerner* (1980) 87 Ill.App.3d 801 [410 N.E.2d 225, 227]; *Josephs* v. *Fuller (Club Dominicus)* (1982) 186 N.J.Super. 47 [451 A.2d 203, 205]; *Bucholtz* v. *Sirotkin Travel, Ltd.* (1973) 74 Misc.2d 180 [343 N.Y.S.2d 438], affd. (1974) 80 Misc.2d 333 [363 N.Y.S.2d 415].)

In the case at bench, the evidence is uncontroverted that respondents acted as more than ticket agents but rather assisted appellant in the planning of his vacation which ultimately resulted in his going to Negril Beach Village in Jamaica. Additionally, the deposition testimony of both the respondent Tappey and of Diana Englar, the manager-owner of Friendly Hills, was that their primary responsibility was to the client as distinguished from the tour operator or hotel. Furthermore, respondents entered into contractual relations on behalf of appellant with third parties and appellant had the right to control respondents in these activities, regardless of whether he in fact did exercise that control. Consequently, in the case at bench, in the dealings

which are the subject of this action, the uncontroverted evidence shows that respondents were acting as appellant's agent.

As agents, respondents had a duty to use reasonable efforts to apprise appellant of information material to the agency which they had notice he would desire. (Rest.2d Agency, § 381, p. 182; Civ. Code, § 2020; 3 Cal.Jur.3d, Agency, § 91, pp. 123-124.) Appellant claims that respondents were negligent in failing to warn him of the dangers involved in the water sports in which he would engage on his vacation.

In *Rookard* v. *Mexicoach* (9th Cir. 1982) 680 F.2d 1257, the court of appeals was faced with a similar situation. The Rookards were injured when the Mexican autobus on which they were traveling was involved in a collision. At the time of the collision, the Rookards were traveling through Mexico on vacation. They had purchased their bus ticket from Mexicoach which received a commission for the sale of the ticket but did not operate the bus lines. The Rookards claimed that Mexicoach failed, among other things, to adequately warn them of the hazards of traveling on Mexican buses. The trial court granted a summary judgment in Mexicoach's favor and the Rookards appealed.

The appellate court initially determined that there were factual issues as to whether Mexicoach was the Rookards' agent and then, for purposes of ruling on the propriety of the trial court's order, assumed that an agency existed. The court concluded that as an agent, Mexicoach had a duty to warn the Rookards of known dangers.

That court further held that "[t]he scope of this duty of disclosure will be limited, naturally, to what is reasonable in any given instance. A travel agent is not an insurer, nor can he be reasonably expected to divine and forewarn of an innumerable litany of tragedies and dangers inherent in foreign travel. Nonetheless, it does not follow that because a travel agent cannot possibly presage all dangers, he should be excused entirely from his fiduciary duties toward his principal to warn of those dangers of which he is aware, or should be aware in the exercise of due care." (*Rookard* v. *Mexicoach, supra,* 680 F.2d at p. 1263.) Based upon this reasoning, the court concluded that in that case there were factual issues as to whether Mexicoach had breached its duty to disclose.[4]

---

[4]The court based this decision in part upon the following excerpt from the deposition of Mexicoach's president: "A: I wouldn't ride on any Mexican bus. My life belongs to my family and— [¶] Q: Do you consider that you are taking your life in your hands when you ride a Mexican bus? [¶] A: Yes, not because of the bus, because of the drivers. Every driver in Mexico is moody, drinks tequila. . . ." (*Rookard* v. *Mexicoach, supra,* 680 F.2d at p. 1261, italics omitted.)

Other jurisdictions have followed a similar analysis as that employed in *Rookard* when faced with this issue. In *United Airlines, Inc.* v. *Lerner, supra,* 410 N.E.2d 225, 228, the court determined that "[w]hile there is no duty of investigation, the travel agent must disclose all information the agent learns which is material to the object of the agency." The court concluded that that travel agent did not breach a duty by failing to warn plaintiffs of the potential for weather conditions causing temporary road closures thereby interrupting plaintiff's ski vacation. The court reasoned that "[t]he law requires only that agents be loyal, not prescient." (*United Airlines, Inc.* v. *Lerner, supra,* 410 N.E.2d at p. 228.)

In *Josephs* v. *Fuller (Club Dominicus), supra,* 451 A.2d 203, however, the court reasoned that while the *Lerner* court stated that a travel agent had no duty of investigation "it would seem absurd to hold that [the travel agent] had no duty to acquire any knowledge of the facilities it was booking. Plaintiffs could well have made their own arrangements, choosing a resort at random. But rather than risk a substandard vacation, they took advantage of the service offered by defendant." (*Id.,* at p. 205.)

One California appellate court has employed reasoning similar to the *Josephs* court to expand the duty of a real estate broker to require the broker to disclose facts to his principal in a real estate transaction. In *Easton* v. *Strassburger* (1984) 152 Cal.App.3d 90 [199 Cal.Rptr. 383], plaintiffs sued a real estate broker due to his failure to discover and disclose defects in the soil of the residential property they purchased. The broker argued that although he had a duty to disclose material facts which were known to him, the trial court erred by instructing the jury that he had a duty to disclose material facts "which through reasonable diligence should be known to him." (*Easton* v. *Strassburger, supra,* 152 Cal.App.3d at p. 98.) The appellate court reasoned that "[t]he primary [purpose] of the [duty to disclose rule is] to protect the buyer from the unethical broker and seller and to insure that the buyer is provided sufficient accurate information to make an informed decision whether to purchase. These purposes would be seriously undermined if the rule were not seen to include a duty to disclose reasonably discoverable defects. If a broker were required to disclose only known defects, but not also those that are reasonably discoverable, he would be shielded by his ignorance of that which he holds himself out to know. The rule thus narrowly construed would have results inimical to the policy upon which it is based. Such a construction would not only reward the unskilled broker for his own incompetence, but might provide the unscrupulous broker the unilateral ability to protect himself at the expense of the inexperienced and unwary who rely upon him." (*Easton* v. *Strassburger, supra,* 152 Cal.App.3d at pp. 99-100.) The court further explained that "[c]ases will undoubtedly arise in which the defect in the property is so clearly

apparent that as a matter of law a broker would not be negligent for failure to expressly disclose it, . . ." (*Id.*, at p. 103.)[5]

Based upon this analysis, we conclude that a travel agent has a duty to disclose reasonably obtainable material information to the traveler unless that information is so clearly obvious and apparent to the traveler that, as a matter of law, the travel agent would not be negligent in failing to disclose it. We shall hold, as a matter of law, that in the case at bench respondents did not breach this duty.

Appellant seeks to hold respondents liable for their failure to adequately warn him of the dangers he would encounter while water-skiing at Negril Beach Village. The sole factual basis for this claim is represented by the following excerpt from plaintiff's deposition:

"Q: Did you specifically ask [respondent Tappey] whether you had to bring your own waterski equipment with you?

"A: Yes, I did.

"Q: What did she tell you, if anything?

"A: She said no, I didn't have to.

"Q: Do you know where she acquired that information, that you wouldn't have to bring your own equipment?

"A: She had a very thick binder that had more detailed information than the initial brochure did on the ski resort—I mean, than the Jamaican resort."[6]

In determining the scope of a duty the foreseeability of harm is of primary importance. (*Gomez* v. *Ticor* (1983) 145 Cal.App.3d 622, 628 [193 Cal.Rptr. 600].) Appellant, before water-skiing at Negril Beach, discovered that the one set of water skis at the hotel was old, worn and in

---

[5]See also *Marshall* v. *United Airlines* (1973) 35 Cal.App.3d 84, 90 [110 Cal.Rptr. 416]: "It is established law, at least in the exercise of ordinary care, that one is under no duty to warn another of a danger equally obvious to both."

[6]We disregard appellant's statement in his opening brief that "[d]efendants represented to plaintiff that the equipment and facilities at Negril Beach Village were modern, safe, and up to the standards required by plaintiff. ([S]ee APPELLANT'S APPENDIX IN LIEU OF CLERK'S TRANSCRIPT, (Deposition of Dennis McCollum) pages 71-293.)" Appellant's citation to 222 pages of deposition testimony as support for the foregoing statement is not an adequate reference to the record. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 421, pp. 4389-4390.)

bad repair. At that time he also saw that there was no observer in the boat, but only a driver. He examined the skis and after his first run concluded on his own that they were not too dangerous. Appellant skied a second time on the skis without incident. It was only during his third run that he fell and was injured.

If the condition of the skis was sufficient to pass the inspection of appellant, who considered himself a good skier, it cannot reasonably be expected that a travel agent should obtain superior knowledge of the state of the equipment before responding to the traveler's inquiry as to whether the hotel had equipment available. Furthermore, if the equipment or the skiing conditions, including, but not limited to the absence of an observer in the boat, are obviously unsafe it is incumbent upon the traveler to refrain from using those facilities. He cannot simply ski with impunity, mistakenly secure in the knowledge that the travel agent who arranged his vacation consulted a book, learned that the hotel had ski equipment and therefore assume that that equipment and conditions must be safe despite his observation of their obvious defective appearance. Had the travel agent had a traveler report to it a similar experience with this hotel in the past, the case might have been otherwise. For, in that instance, it could very well have been foreseeable that appellant might be injured while water-skiing at the hotel. There is nothing in the pleadings or in the evidence, however, to suggest that this occurred. We, therefore, conclude that respondents, as a matter of law, did not breach a duty they owed appellant by not warning him as to the condition of the ski equipment or the skiing conditions at the Negril Beach Village. Accordingly, the trial court did not err in granting respondents' motion for summary judgment insofar as appellant's cause of action for negligence is concerned.

## II

Appellant next contends that "[t]ravel services do come with express and implied warranties and there is a factual issue as to the warranties in this case." Appellant urges "[t]he travel counselor told plaintiff he did not have to take his ski and vest. . . . [Appellant] relied on this information. The question of whether this was an innocent misrepresentation or an act of acting when one has a lack of knowledge (i.e. a negligent misrepresentation) is a question of fact for the jury. In either case, the travel counselor, because of her position as fiduciary, and expert in the field, assumed [sic] responsibility for the statement's accuracy.".

In support of this assertion, appellant relies on *Gagne* v. *Bertran* (1954) 43 Cal.2d 481 [275 P.2d 15]. In *Gagne,* plaintiffs hired defendant to test the depth of the fill on a lot plaintiffs were purchasing. Defendant did some

"test drilling" and reported the results to plaintiffs. After purchasing the property, plaintiffs discovered that the fill required a much deeper foundation than defendant's report had led them to believe. Plaintiffs brought an action against defendant for, among other things, breach of warranty. Justice Traynor reasoned that "[f]or historical reasons warranties have become identified primarily with transactions involving the sale or furnishing of tangible chattels [citations] but they are not confined to such transactions. Strict liability has also been imposed for innocent misrepresentations of facts that the maker purported to know, that the recipient relied on in matters affecting his economic interests, and that the maker positively affirmed under circumstances that justify the conclusion that he assumed responsibility for their accuracy." (*Id.*, at p. 486; fns. omitted.) The court held, however, that "[t]he evidence in [*Gagne* v. *Bertran*] does not justify the imposition of the strict liability of a warranty. There was no express warranty agreement, and there is nothing in the evidence to indicate that defendant assumed responsibility for the accuracy of his statements." (*Id.*, at p. 487.)

Similarly, in the case at bench, accepting as true the evidence most favorable to appellant, there is no breach of warranty by respondents. As we explained above, respondents did not breach a duty they owed plaintiff by telling him that the hotel in which he was booked had ski equipment. That statement constituted neither an express nor an implied warranty that plaintiff would be free from the risk of injury by skiing on that equipment or under the water-skiing conditions prevailing at the Negril Beach Village or hotel.

We, therefore, conclude that the trial court did not err in granting summary judgment insofar as plaintiff's cause of action for breach of express and implied warranty are concerned. (See *United Airlines, Inc.* v. *Lerner, supra,* 410 N.E.2d 225, 228.)

Because of our foregoing conclusions we need not, and do not, address the merits of appellant's contention regarding the effect of the exculpatory clause in the hotel brochure.

The judgment is affirmed.

Arguelles, J., and Ringer, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied December 19, 1985.

---

*Assigned by the Chairperson of the Judicial Council.