[No. B166231. Second Dist., Div. Eight. Aug. 26, 2004.]

MARIA MARTINEZ, Plaintiff and Appellant, v.
CHIPPEWA ENTERPRISES, INC., Defendant and Respondent.

COUNSEL

Cheryl Podbielski for Plaintiff and Appellant.

Horvitz & Levy, David M. Axelrad, Karen M. Bray, Kim L. Nguyen; Law Offices of Zurawski & Chase and Kathleen L. Casey for Defendant and Respondent.

OPINION

**COOPER, P. J.**—In this slip-and-fall case, the trial court granted summary judgment to defendant Chippewa Enterprises, Inc., at whose real property plaintiff Maria Martinez slipped on wet pavement, on grounds defendant had not owed plaintiff any duty of care with respect to the open and obvious condition of water on the ground. This ruling did not accord with the relevant law, nor was it justified by the facts presented, which were insufficient to determine the nonexistence of duty. Accordingly, the judgment will be reversed.

## FACTS

Plaintiff filed a single-count negligence/premises liability complaint, alleging that defendant, the owner or lessor of premises known as 9650 Flair Drive in El Monte, had negligently owned, maintained, and operated the

property, so that on February 9, 2001, it was in a dangerous condition, "when plaintiff slipped and fell from water improperly placed on the premises." Plaintiff also alleged that defendant had failed to warn her of the dangerous condition, of which it should reasonably have been aware.

The evidence offered on defendant's motion for summary judgment showed the following material facts, including certain conflicts. According to declarations by plaintiff and her brother, about 7:30 a.m. on February 9, 2001, plaintiff drove her brother to an appointment at the Immigration and Naturalization Service (INS) office situated in defendant's building on Flair Drive. Plaintiff parked on Flair, a block and a half from the building, and she and her brother crossed that street and walked toward the premises. They saw no water on the sidewalk until they reached the building. Nor did they see any cars tracking water into the parking lot through a driveway across the sidewalk. As plaintiff crossed this driveway, with her brother in front of her, "it was wet and I slipped and fell." Plaintiff's shoulder was dislocated, and her back hurt badly. She remained on the ground until an ambulance arrived. Plaintiff's brother declared that the water on the ground "covered dark marks that appeared to be oil marks." He also stated that plaintiff had fallen at a point in the driveway just beyond its apron, which coincided with the sidewalk.

Plaintiff also presented a declaration by Adam Webb, a security guard employed by an independent contractor providing security services to the INS, who had been assigned to defendant's building since 1999. Webb stated he had been informed by an INS officer at 7:40 a.m. on February 9, 2001, that a woman was hurt at the driveway. He went there and found plaintiff on the ground in the driveway. After she stated her back hurt, Webb called 911, and an ambulance responded (along with a fire truck and paramedics), and took plaintiff to Greater El Monte Hospital.[1]

Webb also declared that, on many occasions both before and after the accident, he had seen water in the building's driveway. He stated that it came from sprinklers on the premises, and flowed down the driveway onto Flair Drive. He had often seen the sprinklers running when he arrived at work, his arrival times being between 4:00 a.m. and sometime before 8:00 a.m., and he had had to step around the water to avoid getting spots on his shoes. Webb had not seen vehicles that entered the driveway track in the amount of water shown in a photo of the area where he had found plaintiff, apparently taken the day of the accident. Webb also stated that he knew of another instance during his employment when someone had slipped and fallen in the same general area as plaintiff.

---

[1] On the same day, Webb prepared an incident report. Attached to his declaration, it recited the same facts as just summarized.

Webb's declaration contrasted with that of David Tellez, offered by defendant in support of its motion. Tellez, a day porter and maintenance supervisor for the building, employed by defendant and responsible for day-to-day operations, stated that the sprinklers were on a timer set for 8:00 p.m., and that defendant did not "water the premises during the daytime." The last such watering before plaintiff's accident had occurred at 8:00 p.m. the day before.

Moreover, Tellez stated, while taking photographs of the scene on the day of the accident, he had observed water on the sidewalk and in the gutter. He added, "It was obvious that the water on which plaintiff slipped was tracked in by vehicles entering the driveway from the street." It did not come from defendant's premises, nor was it caused by any condition on them. Tellez concluded, "[Defendant] does not own, control or maintain the sidewalk adjacent to the premises and did not create the condition on which plaintiff fell."[2] Tellez's photographs, attached to his declaration, showed water covering (a) the slanted apron of the driveway, along the sidewalk; (b) the beginning of the flat driveway, beyond the sidewalk, where plaintiff's brother claimed she had slipped and fallen; and (c) a substantial portion of the outdoor driveway itself. Beyond the driveway, additional water extended in the gutter, narrowing and becoming more shallow away from the driveway.

Defendant also offered excerpts of plaintiff's deposition, in which she stated she had seen the wetness of the driveway before she walked on it, and in which she had marked a photograph to show the "approximate" area where she believed she fell. That location was toward the top of the driveway apron, which traversed the sidewalk. In her subsequent declaration, plaintiff reaffirmed that this was an approximation, because she had not taken note of the exact location after she fell.

Defendant's motion for summary judgment asserted, first, that defendant was not under an actionable duty to maintain the sidewalk unless defendant created the dangerous condition, which, based on Tellez's testimony, was not the case. Second, defendant had no duty to warn plaintiff of the allegedly dangerous condition (the wetness), because it was open and obvious.

At the hearing, the court recognized that there was a triable issue regarding the source of the water and defendant's responsibility for it. Nevertheless, the court indicated that the open and obvious presence of the water entitled defendant to summary judgment. The court subsequently granted the motion on this basis. Its minute order stated, in part, "Regardless of the source of the water, or whether plaintiff slipped on the sidewalk or driveway, . . . [¶]

---

[2] Plaintiff objected to these statements, and others, as conclusions, but the trial court never expressly ruled on either party's evidentiary objections. (See *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 670, fn. 1 [25 Cal.Rptr.2d 137, 863 P.2d 207].)

[w]ithout more, the existence of water on concrete or asphalt located outdoors is an open and obvious condition."

## DISCUSSION

■ We review the grant of summary judgment de novo. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476 [110 Cal.Rptr.2d 370, 28 P.3d 116]; *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767 [107 Cal.Rptr.2d 617, 23 P.3d 1143] (*Saelzler*) ■ In brief, to obtain summary judgment, defendant had to show either that one or more elements of plaintiff's claim could not be established, or that there existed a complete affirmative defense to it. (Code Civ. Proc., § 437c, subds. (a), (o)(1), (2), (p)(2).) Defendant could do this by advancing evidence that either negated the claim or element, showed that plaintiff had insufficient evidence to establish it, or established the complete defense. (*Id.,* subd. (p)(2).) Defendant bore the burden of persuading the court to this effect. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].) In determining whether this burden was met, we view the evidence in the light most favorable to plaintiff, as the nonmoving party, liberally construing her evidence while strictly scrutinizing defendant's. (*Id.* at p. 856; *Saelzler, supra,* 25 Cal.4th at p. 768.)

■ Although grounded in an accurate factual premise, the trial court's decision was legally incorrect. The court first ruled that the allegedly dangerous condition plaintiff encountered—the water and wetness at the area (sidewalk or driveway) where she fell—was "open and obvious." That much was correct: defendant's photographs prima facie established the obviousness of the wet condition (at least to sighted persons), and plaintiff—who admitted having seen the wetness before stepping on it—did not dispute this. However, that the hazard was open and obvious did not relieve defendant of all possible duty, or breach of duty, with respect to it. In the trial court and again here, defendant argued only that the obvious appearance of the wet pavement excused defendant from a duty to warn of it. That was most likely so. But the obviousness of a condition does not necessarily excuse the potential duty of a landowner, not simply to warn of the condition but to rectify it. The modern and controlling law on this subject is that "although the obviousness of a danger may obviate the duty to *warn* of its existence, if it is *foreseeable* that the danger may cause injury despite the fact that it is obvious (e.g., when necessity requires persons to encounter it), there may be a duty to *remedy* the danger, and the breach of that duty may in turn form the basis for liability . . . ." (*Osborn v. Mission Ready Mix* (1990) 224 Cal.App.3d 104, 122 [273 Cal.Rptr. 457]; see *id.* at p. 121; *Beauchamp v. Los Gatos Golf Course* (1969) 273 Cal.App.2d 20, 33 [77 Cal.Rptr. 914].)

The court's analysis therefore was incomplete, and led to a premature conclusion of no duty and therefore no liability. The palpable appearance of the wetness may itself have provided a warning of the slippery condition, excusing defendant from having to do so. But it may yet have been predictable that despite that constructive warning, the wet pavement would still attract pedestrian use. For example, the pavement appears to have provided a principal if not sole access way from the street to defendant's building, which housed a government office serving the public. In these circumstances—which the evidence did not negate, but supported—defendant may have been charged with a duty of relieving the dangerous condition. Whether such a duty existed depends upon a number of as yet unresolved factors, such as the foreseeability of harm, defendant's advance knowledge *vel non* of the dangerous condition, and the burden of discharging the duty. (See *Rowland v. Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561].) The facts presented on the motion for summary judgment, some of them in direct conflict (e.g., the source of the water), did not permit resolution of this question of duty in defendant's favor.

Defendant urges otherwise. Postulating arguendo that the source of the wetness was the building's sprinklers, defendant argues that certain of the factors identified as relevant to duty in *Rowland v. Christian, supra,* 69 Cal.2d at pages 112–113, should militate dispositively against "imposing a duty of due care under the facts of this case . . . ." But most of defendant's argument is not tied to the facts of this case (which themselves have scarcely been developed). For example, defendant adduces the straw man that if a duty to prevent or remedy existed in this case, "every homeowner, business owner, and landowner would be subject to liability any time they ran their sprinklers and failed to dry the pavement in front of their premises," or they would be subject to expense and inconvenience "every time they ran their sprinklers." But a holding that defendant's general duty of due care (Civ. Code, § 1714) extended to assuring that the pavement adjacent to its drive-way remained free of dangerous wetness would not entail a legislative rule of the type and sweep that defendant here hypothesizes.

Likewise, defendant's argument that there is no evidence either that it acted recklessly, or that it could foresee plaintiff's accident, overlooks that on this motion for summary judgment, it was defendant's burden to provide facts justifying a favorable decision on an element of plaintiff's cause of action. The only facts defendant presented bearing on foreseeability were a series of photographs of the distinctly wet if not puddled end and apron of the driveway. Once again, the facts before the trial court and this court did not warrant a conclusion that defendant neither possessed nor breached a duty of care in this connection. (Cf. *Lopez v. Superior Court* (1996) 45 Cal.App.4th 705, 716–717 [52 Cal.Rptr.2d 821].)

Defendant also suggests that it would have been appropriate, as a practical matter and as a factor in allocating duty, for plaintiff to have stepped around the wet area (presumably into the gutter), or to have walked more carefully when she encountered the wetness. Depending upon the ultimate evidence, how plaintiff navigated the area may pose an issue of comparative negligence. (See, e.g., *Beauchamp v. Los Gatos Golf Course, supra,* 273 Cal.App.2d at pp. 35–36.) But that does not now warrant relieving defendant of all the legal burden of the situation.

Defendant does not reassert the contention that it could not be responsible for the condition of the sidewalk, assuming that plaintiff fell there. Not only was the evidence as to the location of plaintiff's accident conflicting and unresolved, defendant recognized at the outset that it might be responsible for a condition of the sidewalk that it caused. (See *Kopfinger v. Grand Central Pub. Market* (1964) 60 Cal.2d 852, 857–860 [37 Cal.Rptr. 65, 389 P.2d 529].)

## DISPOSITION

The judgment is reversed. Plaintiff shall recover costs.

Rubin, J., and Boland, J., concurred.