Jill KALTER, et al., Plaintiffs,

v.

GRAND CIRCLE TRAVEL, et al., Defendants.

No. CV 08–02252 SJO (AGRx).

United States District Court, C.D. California.

June 24, 2009.

David B. Leichenger, Jon Matthew Steiner, Levitt Leichenger and Aberle, Beverly Hills, CA, for Plaintiffs.

John S. Murray, Mary Agnes Watson, Walsworth Franklin Bevins & McCall LLP, Orange, CA, Robert Mueller, Rodney E. Gould, Rubin Hay and Gould PC, Framingham, MA, for Defendants.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** [Docket No. 57]

S. JAMES OTERO, District Judge.

This matter is before the Court on Defendants Grand Circle, LLC (erroneously sued as Grand Circle Travel, Overseas Adventure Travel and Overseas Adventure Travel Partners, Inc.) and Grand Circle Corporation's (collectively, "Grand Circle") Motion for Summary Judgment, filed May 13, 2009. Plaintiffs Jill and Scott Kalter (collectively, "Plaintiffs") filed an Opposition, to which Grand Circle replied. The Court found this matter suitable for disposition without oral argument and vacated the hearing set for June 1, 2009. *See* Fed.R.Civ.P. 78(b). For the following reasons, Grand Circle's Motion is GRANTED.

## I. *BACKGROUND*

Grand Circle is a tour operator that arranges vacation packages to destinations around the world. (Olson Decl., filed as Gould Decl. Ex D, ¶¶ 2, 8; Pls.' Separate Statement of Undisputed and Disputed Material Fact ("Statement") ¶ 1.) Jill Kalter ("Kalter") purchased a Grand Circle "Amazon River Cruise & Rain Forest" tour, along with an optional post-trip extension to visit the Inca ruins at Machu Picchu. (Olson Decl. ¶ 13; Pls.' Statement ¶ 2.) Prior to departing on her trip, Kalter received from Grand Circle an itinerary of the Machu Picchu trip extension (the "Itinerary"), which stated that her group would visit Machu Picchu on two consecutive

days, and that on the second day she would have the option of remaining with a guide or exploring the ruins on her own. (Kalter Dep., filed as Gould Decl. Ex. A, 35:5–35:7, 36:15–20; 44:19–45:22; Itinerary, filed as Leichenger Decl. "Kalter Dep. Ex. 20"; Pls.' Statement ¶¶ 3–4.) The Itinerary also stated: "[t]hese Inca sites are not like ancient squares in Europe; they are spread out over steep hillsides with large stone steps and uneven surfaces. . . . In the ruins, there are no handrails some places where you might like one." (Itinerary at 65.) Kalter received and read the itinerary prior to departing on her trip. (Kalter Dep. 36: 15–20.) In addition, the tour guide, Jesus Cardenas, distributed a map of Machu Picchu to the tour participants prior to entering the park.[1] (Cardenas Decl. ¶ 20; Kalter Dep. 59:18–20.) The map includes a section entitled "Visit Regulations," which states, among other things, "Do not climb the walls," and "Follow only designated routes according to arrows." (Map, filed as Cardenas Decl. Ex. C.)

It was raining on both days Kalter was at Machu Picchu. (Kalter Dep. 54:12–16, 71:8–11.) The first day, she remained with Cardenas and walked on the stone paths. *Id.* 52:22–25, 64:11–16. The second day, she opted to explore on her own, and ventured off the established paths. *Id.* 67:24–68:1, 126:4–6; Supplemental Cardenas Decl. ¶ 11–12. Cardenas states that he gave verbal warnings to the group to use caution due to wet and slippery conditions. (Cardenas Decl. ¶ 13.) Kalter states that she did not hear Cardenas give these warnings, but that she "has no reason to doubt" that he did so. (Kalter Decl. ¶ 7; Kalter Dep. 54:24–55:2.) Kalter went to an area known as the "terraces," filled with vertical rock walls that contain small stone protrusions called "floating steps." (Kalter Dep. 8:5–14; Pls.' Statement ¶ 10; *see* Supplemental Cardenas Decl. ¶ 12, Ex. C (photographs of only set of floating steps above the location where Kalter was found after the fall).[2]) Some of these terraces are along paths color-coded by length, and no paths at Machu Picchu require traversing floating steps. (Cardenas Decl. ¶ 5.) Approximately one hour after venturing out on her own, Kalter became lost and disoriented, and was concerned about connecting with her group so that she would not miss the train. (Kalter Decl. ¶ 10; Kalter Dep. 85:11–13, 101:20–21.) In an effort to get a better view of where she was, Kalter stepped up onto the bottom two floating steps of a vertical wall. (Kalter Decl. ¶¶ 10–11; Kalter Dep. 8:16–20; Supplemental Cardenas Decl. Ex. C.) Kalter did not think this was a dangerous act. (Kalter Decl. ¶ 11.) As a result, Kalter fell and suffered serious injuries, and is now a quadriplegic.[3] (Pl.'s Opp'n 3.)

Grand Circle now moves for summary judgment on the grounds that: (1) Plaintiffs' claims are barred under the doctrine of primary assumption of the risk; (2) Grand Circle had no duty to warn Kalter

---

1. The map is produced by the Peru National Institute of Culture, not Grand Circle.

2. Plaintiffs object to these photographs on the grounds that they "lack proper foundation, are misleading in that the angles from which most are taken (particularly the closeups) and the two-dimensional nature of them cannot fairly (and accurately) depict how Ms. Kalter viewed the conditions at the time that she stepped on the two lowest steps." (Pls.' Objections to Evidence 2.) However, Cardenas states in his declaration that he took all of the photographs, and that they fairly and accurately reflect the conditions and terrain at Machu Picchu. (Supplemental Cardenas Decl. ¶ 8.) The Court finds these photographs to fairly and accurately represent the floating steps.

3. It is unclear exactly how Kalter fell, as she does not remember and there were apparently no witnesses. (Kalter Dep. 12:22–13:5.)

of the dangerous nature of the floating steps because it was open and obvious; and (3) Grand Circle is not liable for the actions of Cardenas because he is an independent contractor.

## II. *DISCUSSION*

Summary judgment is proper only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A "material" fact is one that could affect the outcome of the case, and an issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of material fact exists, courts view the evidence in the light most favorable to the nonmoving party. *Id.* at 255, 106 S.Ct. 2505.

### A. *Primary Assumption of the Risk Bars Plaintiffs' Claims.*

■■■ "The question of the existence and scope of a defendant's duty of care is a legal question which depends on the nature of the sport or activity in question and on the parties' general relationship to the activity, and is an issue to be decided by the court, rather than the jury." *Knight v. Jewett*, 3 Cal.4th 296, 313, 11 Cal.Rptr.2d 2, 834 P.2d 696 (1992). The doctrine of primary assumption of the risk applies where "the defendant owes no legal duty to protect the plaintiff from the particular risk of harm that caused the injury." *Id.* at 314–315, 11 Cal.Rptr.2d 2, 834 P.2d 696. To determine if primary assumption of the risk applies, courts look to the nature of the activity, and the parties' relationship to that activity. *Branco v. Kearny Moto Park, Inc.*, 37 Cal.App.4th 184, 190, 43 Cal.Rptr.2d 392 (1995). The question

turns on whether the plaintiff's injury is within the "inherent" risk of the activity. *Neinstein v. Los Angeles Dodgers, Inc.*, 185 Cal.App.3d 176, 182, 229 Cal.Rptr. 612 (1986). A risk is inherent to an activity if its elimination would chill vigorous participation in the activity and thereby alter the fundamental nature of the activity. *Knight*, 3 Cal.4th at 318, 11 Cal.Rptr.2d 2, 834 P.2d 696. Accordingly, "the doctrine of primary assumption of risk applies where 'conditions or conduct that otherwise might be viewed as dangerous often are an integral part' of the activity itself." *Andia v. Full Serv. Travel*, No. 06–437, 2007 WL 4258634, at *4, 2007 U.S. Dist. LEXIS 88247, at *13 (S.D.Cal. Nov. 29, 2007) (citing *Knight*, 3 Cal.4th at 315, 11 Cal.Rptr.2d 2, 834 P.2d 696). When primary assumption of the risk applies, a defendant is only liable for a plaintiff's injuries "if the defendant 'engages in conduct so reckless as to be totally outside the range of the ordinary activity involved in the sport or activity' or increases the inherent risk involved in the activity." *Id.* (citing *Saville v. Sierra College*, 133 Cal. App.4th 857, 866, 36 Cal.Rptr.3d 515 (Cal. Ct.App.2005)).

■■■ If, on the other hand, "the defendant does owe a duty of care to the plaintiff, but the plaintiff proceeds to encounter a known risk imposed by the defendant's breach of duty," the doctrine of secondary assumption of the risk applies, which is analyzed under comparative fault principles. *Knight*, 3 Cal.4th at 315, 11 Cal. Rptr.2d 2, 834 P.2d 696. In such a case, "the trier of fact, in apportioning the loss resulting from the injury, may consider the relative responsibility of the parties." *Id.*

■■■ Here, Kalter was engaged in the activity of hiking on uneven terrain amongst ancient ruins. Inherent in this activity is the risk that one will fall and

become injured. (*See Andia*, 2007 WL 4258634, at *5, 2007 U.S. Dist. LEXIS 88247, at *15) (holding that "falling is always a risk when engaging in any kind of strenuous hike on steep and uneven terrain"). The Itinerary Kalter received prior to the tour informed her that the Inca sites at Machu Picchu "are spread out over steep hillsides with large stone steps and uneven surfaces." (Itinerary 65.) Eliminating tour participants' access to these large stone steps and uneven surfaces in an attempt to protect against the risk of falling would eliminate the ability to view the Inca sites, and thus "alter the fundamental nature of the activity." *See Knight*, 3 Cal.4th at 318, 11 Cal.Rptr.2d 2, 834 P.2d 696. In other words, "hiking across uneven and challenging natural terrain is an inherent risk of hiking to [the ancient ruins at Machu Picchu], without which the general public would be substantially deprived of viewing the ... phenomenon." *See id.* Moreover, as discussed further below, Kalter did not fall while engaging in the activities condoned by Defendants—she chose to leave the established stone pathway, and further endangered herself by stepping onto the floating steps. Accordingly, the Court finds that primary assumption of the risk applies to Kalter's injuries from falling while hiking at Machu Picchu. Therefore, Grand Circle is only liable for only liable for Kalter's injuries "if [it] engage[d] in conduct so reckless as to be totally outside the range of the ordinary activity involved in [hiking amongst ancient ruins on uneven terrain] or increase[d] the inherent risk involved in the activity." *See Saville*, 133 Cal.App.4th at 866, 36 Cal.Rptr.3d 515.

 Plaintiffs argue that Grand Circle breached its duty to Kalter by "encouraging and permitting her to roam the ruins of Machu Picchu on her own, then directing her to an area unknown, i.e. which was not explored with her Trip Leader the prior day, and given the conditions of that day, was dangerous and confusing." (Pls.' Opp'n 10.) Kalter was an experienced hiker, and prior to electing to explore the ruins on her own instead of remaining with Cardenas, she had read Grand Circle's Itinerary informing her that she would encounter steep hillsides, large stone steps, and uneven surfaces. (Itinerary 65; Kalter Dep. 36: 15–20, 48:9–14.) She also received the map from Cardenas which stated "Do not climb the walls" and "Follow only designated routes according to arrows." (Kalter Dep. 59:18–20; Cardenas Decl. Ex. C.) Moreover, Plaintiffs do not dispute that visitors to Machu Picchu often wander the ruins on their own, and that park regulations do not prohibit them from doing so. (*See* Cardenas Decl. ¶ 15; Pls.' Statement ¶ 26.) In addition, Plaintiffs provide no evidence that Cardenas or Grand Circle knew Kalter would attempt to climb the floating steps, and do not dispute Cardenas' statement that Kalter "never asked me if she could climb down from or up to any terraces. At no time did I tell Ms. Kalter that she should climb down or up the series of terraces, and at no time did I tell Ms. Kalter that it would be okay for her to climb up or down the stone terrace walls or on the 'floating steps.'" (Cardenas Decl. ¶ 16.)

Given these undisputed facts, Grand Circle's act of allowing Kalter to explore on her own areas she had not been to with Cardenas was not "so reckless as to be totally outside the range of ordinary activity" involved in the excursion, nor did it increase the inherent risk of falling and sustaining injury involved in hiking in this region. *See Saville*, 133 Cal.App.4th at 866, 36 Cal.Rptr.3d 515. The Court also notes that other participants in the tour stated that Cardenas was "outstanding and the accident was not at all [his] fault. And of course, [Kalter] fell on a day of totally independent activities." (*See* Dobbins Dep. 13–25; *see also* Garvey Dep. 121:21–

25.) Moreover, even if Grand Circle or Cardenas erred in estimating Kalter's ability to hike on her own across the uneven terrain at Machu Picchu in rainy weather, "an instructor's assessment errors—either in making the necessarily subjective judgment of skill level or the equally subjective judgment about the difficulty of conditions—are in no way 'outside the range of the ordinary activity involved in the sport.'" *Kane v. Nat'l Ski Patrol,* 88 Cal. App.4th 204, 214, 105 Cal.Rptr.2d 600 (Cal. Ct.App.2001); *see also Andia,* 2007 WL 4258634, at *5, 2007 U.S. Dist. LEXIS 88247, at *16 (holding that tour guide's "decision to allow Plaintiff to return to the Rangers station alone [during a guided hike to a lava flow] . . . at most constituted 'assessment errors,' but these 'subjective judgments about the difficulty of the conditions were 'in no way so reckless as to be totally outside the range of the ordinary activity involved' in the activity of lava hiking").

Plaintiffs have submitted a declaration by Alexander Anolik, a travel and tourism attorney, stating that Cardenas "failed to insist, explain the need for or put together a 'buddy system' whereby Ms. Kalter would not have to be in this strange and dangerous area by herself," and contending that his conduct of allowing Kalter to explore on her own fell below the standard of care in the travel industry. (Anolik Decl. ¶ 4.) Anolik submits no case law or any other information to suggest that such conduct falls below a standard of care, or that any other tour companies or guides employ such practices. (*See* Supplemental Cardenas Decl. ¶ 3, stating that he is unaware of any other tour guide at Machu Picchu that requires a buddy system.) Further, as explained above, allowing tour participants to hike on their own, even off trail on uneven terrain, is not so reckless as to be totally outside the range of the ordinary activity involved in hiking. *See Andia,* 2007 WL 4258634, at *5, 2007 U.S.

Dist. LEXIS 88247, at *16. As such, the Court finds Anolik's bare assertions insufficient to create a triable issue of fact regarding whether Defendants' conduct was so reckless as to be totally outside the range of the ordinary activity or otherwise increased the inherent risk involved in the activity of hiking amongst ancient ruins in an undeveloped area. Accordingly, Grand Circle is not liable for Kalter's injuries under the doctrine of primary assumption of the risk.

B. *Grand Circle Had No Duty to Warn Kalter of the Open and Obvious Danger Posed by the Wet Floating Steps.*

 "It is established law, at least in the exercise of ordinary care, that one is under no duty to warn another of a danger equally obvious to both." *Andia,* 2007 WL 4258634, at *6, 2007 U.S. Dist. 88247, at *18 (citing *Marshall v. United Airlines,* 35 Cal.App.3d 84, 90, 110 Cal.Rptr. 416 (1973)). Here, it was obvious to both Kalter and Cardenas that it was raining, and Kalter admitted at her deposition that she "knew [the stones] were slippery and wet." (Kalter Dep. 64:19–65:3, 71:14–15.) Moreover, the danger of slipping and falling from stepping on a small wet stone step protruding from a vertical wall is undoubtedly an obvious danger.

Plaintiffs conclusorily state that "there are genuine issues of material fact regarding whether the conditions that caused Ms. Kalter's injuries were open and obvious," but offer no evidence to support this claim. (Pls.' Opp'n 13.) Indeed, Kalter admits that it was "raining on and off," that she "knew the rocks could be slippery", and that before she started climbing she could see the third step was missing. (Kalter Dep. 71:8–15, 101:12–18.) Kalter offers no evidence to suggest that she believed climbing the floating steps was allowed or common, or that she saw anyone else climbing them. Further, it appears that

the danger of climbing the steps was obvious to other members of Kalter's tour; when asked whether he saw anyone climbing the steps, one member responded, "Good Lord. Someone, probably the guide, said that the Indians might have used them." (Dobbins Dep. 24:23–25.) In addition, the map Kalter received prior to entering the park instructed her not to climb the walls. (Cardenas Decl. Ex. C.) Kalter also testified at her deposition that she "thought there would be some risk in climbing up the floating steps." (Kalter Dep. 110:12–22.) Further, Plaintiffs offer no evidence that the risk of slipping on the wet floating steps was any less obvious to Kalter than to Cardenas, especially in light of the fact that Kalter had walked on stone with Cardenas the previous day and noted that the stone was "slippery at times." (Kalter Dep. 64:15–18.)

Plaintiffs also cite case law holding that "although the obviousness of a danger may obviate the duty to *warn* of its existence, if it is *foreseeable* that the danger may cause injury despite the fact that it is obvious (e.g. when necessity requires persons to encounter it), there may be a duty to *remedy* the danger, and the breach of that duty may in turn form the basis for liability." (Pls.' Opp'n 12), citing *Martinez v. Chippewa Entrps., Inc.,* 121 Cal.App.4th 1179, 1184, 18 Cal.Rptr.3d 152 (Cal.Ct. App.2004) (emphasis in original) (holding that trial court erred in granting summary judgment based on obvious danger where plaintiff slipped on water covering defendant landowner's driveway.) While a landowner may be required to remedy a dangerous but obvious condition on his property, the situation differs with regards to a tour guide and tour company, where, as here, the dangerous condition is neither on the guide or company's property nor within their control. Further, in *Martinez,* the plaintiff slipped on water in a defendant's driveway that she had to cross to get by; in contrast, "necessity" did not

"require [Kalter] to encounter" the floating steps. *See Martinez,* 121 Cal.App.4th at 1184, 18 Cal.Rptr.3d 152.

Moreover, numerous courts have held that tour companies and guides have no duty to warn of obvious dangers their customers encounter on trips. *See, e.g., Tei Yan Sun v. Governmental Auths. of Taiwain,* 2001 U.S. Dist. 1160, at *31–32 (finding no liability for failure to disclose dangers of "severe undertow, high waives, and strong surf" at beach, and noting that travel agents have no duty to disclose obvious dangers to travelers) (citing *McCollum v. Friendly Hills Travel Ctr.,* 172 Cal.App.3d 83, 95, 217 Cal.Rptr. 919 (Cal.Ct.App. 1985)); *Passero v. DHC Hotels & Resorts,* 981 F.Supp. 742, 744 (D.Conn.1996)("A tour operator may be obligated, under some circumstances, to warn a traveler of a dangerous condition unknown to the traveler but known to it. . . . This doctrine applies to situations where a tour operator is aware of a dangerous condition not readily discoverable by the plaintiff. It simply does not apply to an obvious dangerous condition equally observable by plaintiff."); *Stafford v. Intrav, Inc.,* 841 F.Supp. 284, 287 (E.D.Mo.1993) (noting that travel agents owe no duty to disclose information that is obvious and apparent to the traveler). Plaintiffs cite no cases in which courts have found tour companies or guides liable for failing to warn of or remedy open and obvious dangers.

Accordingly, the Court finds that Grand Circle had no duty to warn Kalter that the floating steps might be slippery and dangerous in the rain, as this danger was readily observable.

C. *Since Neither Grand Circle Nor Cardenas Are Liable for Kalter's Injuries, the Court Need Not Reach the Issue of Whether Cardenas Is an Employee or Independent Contractor.*

As explained above, neither Grand Circle nor Cardenas are liable for Kalter's

injuries because the doctrine of primary assumption of the risk applies, and because neither had a duty to warn her of the open and obvious danger of falling while climbing wet stone steps protruding from a vertical wall. Further, Plaintiffs do not argue that Cardenas' actions after Kalter fell caused or contributed to her injury. As such, whether Cardenas is Grand Circle's employee or an independent contractor does not affect Grand Circle's liability, and the Court need not reach the issue.

III. *RULING*

For the foregoing reasons, the Court GRANTS Grand Circle's Motion for Summary Judgment.

IT IS SO ORDERED.