Filed 2/11/16  Mossman v. The J. Paul Getty Trust CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| SCOTT MOSSMAN, | B262951 |
| Plaintiff and Appellant, | (Los Angeles County |
| v. | Super. Ct. No. BC486729) |
| THE J. PAUL GETTY TRUST et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael P. Linfield, Judge.  Affirmed.

Daniels, Fine, Israel, Schonbuch & Lebovits, Paul R. Fine, Timothy J. Hughes and Bernadette C. Brouses, for Plaintiff and Appellant.

DeSimone & Huxster, Gerry DeSimone and Jon Schwalbach, for Defendant and Respondent The J. Paul Getty Trust.

Horvitz & Levy, Lisa Perrochet, John F. Querio; Bradley & Gmelich, Thomas P. Gmelich and Mark I. Melo, for Defendant and Respondent Kiewit Infrastructure West Co.

_____

Plaintiff and appellant Scott Mossman appeals from a summary judgment in favor of defendants and respondents The J. Paul Getty Trust (the Trust) and Kiewit Infrastructure West Co. (Kiewit) in this negligence action based on the physical characteristics of a sidewalk and bus stop on Sepulveda Boulevard. Mossman contends there are triable issues of fact as to whether the physical characteristics of the sidewalk created a dangerous condition by inviting pedestrian traffic, and therefore, defendants had a duty to install signs and barriers prohibiting pedestrian traffic beyond the bus stop. We conclude the trial court properly found there was no dangerous condition of the property, because it was not reasonably foreseeable that a pedestrian would step into the heavily-trafficked roadway after the 40-foot sidewalk ended, continue walking for several hundred feet, and attempt to cross the four-lane street. We affirm the judgment.

**FACTS**

In June 2011, the Trust owned the southwest corner of Getty Center Drive and Sepulveda Boulevard. The Trust's property ran from the intersection to 500 feet south of Getty Center Drive on the western side of Sepulveda Boulevard. A pedestrian leaving the Getty Center could walk on a sidewalk on the south side of Getty Center Drive heading east, under the I-405 freeway overpass, to Sepulveda Boulevard. There was a lighted crosswalk at the intersection with a pedestrian signal to cross Sepulveda Boulevard. Alternatively, to the right was a 40-foot sidewalk pad, south of Getty Center Drive, on the western side of Sepulveda. It was improved with a bench, a covered bus shelter, a bus sign, and lighting. Past the bus stop, the sidewalk ended and the route was almost entirely blocked by a retaining wall more than 10 feet high. The corner of the retaining wall was just a few feet from Sepulveda Boulevard.

The retaining wall continued along Sepulveda Boulevard. There was a strip of dirt less than five feet wide between the retaining wall and the curb. The ground cover originally planted in this strip was trampled by crowds when the Getty Center opened.

2

The Trust placed 16-inch square tiles, similar to stepping stones, in a continuous path in the dirt for approximately 30 feet. The stones ended in the remaining ground cover along the curb of the roadway. There was no permit issued for the stones. The City of Los Angeles would not have approved a sidewalk along the strip, because the space did not allow for five feet between a sidewalk and the road.

The eastern side of Sepulveda, south of Getty Center Drive, had a sidewalk. In 2006, a pedestrian attempted to cross Sepulveda at a location approximately 450 feet south of the intersection and was struck by a car. It is not known whether that pedestrian was walking north or south on Sepulveda prior to crossing. In 2009, in connection with a project to widen the I-405 freeway, Kiewit placed a sign at the intersection that said "Freeway Detour." A draft of Kiewit's traffic control plan for the intersection stated that during construction, it would remove the bus stop and transit shelter, install a sign saying "Peds Wait Here" in place of the "Freeway Detour" sign, and place temporary rails and fencing to block the path over the stones.

Mossman was employed at the Getty Center by a third party in catering and food service. He finished work after 9:00 p.m. on June 1, 2011. His car was being repaired, so he walked under the freeway overpass and turned south at Sepulveda. Just past the bus stop, before the end of the sidewalk, he stepped into the road. He did not use the square stone path. He walked along the side of the roadway for approximately 335 feet, before attempting to cross Sepulveda Boulevard. At approximately 9:25 p.m., he was struck by a car driving northbound and suffered catastrophic injuries.

## PROCEDURAL BACKGROUND

Mossman, through his mother Susan Mossman as conservator of his person and estate, filed a negligence action against several defendants on June 15, 2012. He filed the operative first amended complaint against Kiewit and other defendants on April 2, 2013. Mossman substituted the Trust as a Doe defendant.

3

The Trust filed a motion for summary judgment. The Trust argued that: it did not own, control or maintain the area claimed to constitute a dangerous condition; it did not create a dangerous condition; the accident was not caused by the Trust's actions; and any dangerous condition was open and obvious.

Kiewit also filed a motion for summary judgment. Kiewit argued that: it owed no duty to Mossman, because it did not own, control or maintain the roadway; no dangerous condition existed at the location; Kiewit's conduct was not a substantial factor in causing Mossman's injuries; and Kiewit did not have actual or construction notice of any dangerous condition at the location. Both defendants submitted evidence in support of their motions for summary judgment establishing undisputed facts.

Mossman opposed the Trust's motion for summary judgment on the grounds that the Trust owned and controlled the corner of the intersection at issue. The Trust created the dangerous condition by installing the surface materials. The design of the sidewalk led pedestrians down the street, then narrowed and ended abruptly, in a manner which encouraged pedestrians to walk in the street or cross in an unsafe area.

Mossman opposed Kiewit's motion for summary judgment on the grounds that several factors contributed to create a dangerous condition, Kiewit had a contractual duty to discover and correct unsafe conditions at the intersection, and Kiewit's breach of its duty significantly contributed to the accident.

In support of his oppositions to summary judgment, Mossman submitted the declaration of expert traffic engineer Edward Ruzak. Ruzak stated that the sidewalk and the square stones were visible to pedestrians from the southwest corner of the intersection. The arrangement invited pedestrians to walk southbound on the west side of Sepulveda, south of the bus shelter. The abrupt end of the sidewalk and stones was not readily observable to pedestrians at the intersection, particularly at night. The bus shelter and the retaining wall impeded visibility, so that a pedestrian standing on the corner would not be able to see that the sidewalk and stone path eventually ended. The visible portion suggested pedestrians could continue to walk southbound on a sidewalk or path on the western side of Sepulveda until reaching the next cross street at Bel Terrace.

4

There was a sidewalk on the eastern side of Sepulveda. When the sidewalk abruptly ended on the western side, a pedestrian might attempt to cross Sepulveda at that location, or south of that location, to reach the sidewalk on the eastern side. Mossman may have walked on the curb or ground cover on the side of western Sepulveda. Pedestrians rely on the existence and placement of sidewalks, signage or lack of signage, pavement markings, materials and lighting to navigate. Defendants could have installed a warning sign or removed the stepping stones, if they did not want pedestrians to walk in the area.

Ruzak opined that Mossman relied on the existence and placement of the sidewalk and the stone path to decide to continue walking southbound, and at some point he would have stepped on the stones or the curb or the ground cover because he continued to walk southbound. The design, layout, and physical characteristics of the intersection's pedestrian facilities created a trap for pedestrians. The intersection did not have an adequate pedestrian control plan, because the arrangement guided pedestrians away from safety at the intersection and into the roadway. Regardless of whether pedestrians step on the sidewalk or stone path, the arrangement invites them to walk southbound. It is particularly important to provide an adequate pedestrian control plan when there is such high speed and traffic volume on the roadway. Pedestrians should be separated from traffic by a continuously paved, well-lit, and marked sidewalk a minimum of five feet wide. If a continuous sidewalk cannot be provided, the area should have adequate pedestrian prohibition signs or other markings advising pedestrians of their limited options.

The crosswalk was not frequently painted and was not painted bright white, which would have called further attention to it for pedestrians.

The following factors, taken together or individually, constituted an unsafe condition: (1) the sidewalk narrowing or ending south of the bus shelter; (2) the lack of beacons, flashing lights and/or signs to warn that there was no pedestrian access south of the bus shelter or to warn motorists of the presence of pedestrians; (3) the lack of a sidewalk south of the bus shelter; (4) the volume of pedestrian and vehicle traffic due to

5

proximity to the freeway and the Getty Center; (5) the high speed of motorists in combination with the lack of commercial or residential development, straight roadway, and retaining walls; (6) the crosswalk at the intersection was not frequently painted; (7) there was no crosswalk south of Getty Center Drive at the intersection of Sepulveda and Bel Terrace; (8) the length of the roadway that a pedestrian walks between Getty Center Drive and Bel Terrace; (9) a pedestrian's view of the western side of Sepulveda, south of the bus shelter, is blocked; (10) there is no accessible information about the limited pedestrian access and crossing; and (11) the existence and placement of the stone path constituted a sidewalk leading pedestrians south of the intersection and into the roadway.

In Ruzak's opinion, the factors caused or significantly contributed to Mossman's accident. The defendants could have remedied the dangerous condition by installing a warning sign that the southbound sidewalk ended or there was no pedestrian access south of the bus shelter, or removing the stone path and installing a barricade to prevent pedestrians from walking southbound past the bus stop.

The Trust and Kiewit each filed replies. A hearing was held on the summary judgment motions on January 9, 2015. The trial court granted the motions on the ground that there was no dangerous condition as a matter of law. The trial court found it was not reasonably foreseeable that after walking 40 feet, rather than return to the crosswalk at the intersection, a pedestrian would step into the heavily-trafficked roadway, continue walking for 300 feet, and attempt to cross the four-lane street. There was no evidence Mossman ever stepped on the stone path at all. The trial court entered orders granting summary judgment and judgment in favor of each defendant. Mossman filed a timely notice of appeal.

## DISCUSSION

### Standard of Review for Summary Judgment

6

"We review the grant of summary judgment de novo. [Citations.] . . . In brief, to obtain summary judgment, defendant had to show either that one or more elements of plaintiff's claim could not be established, or that there existed a complete affirmative defense to it. (Code Civ. Proc., § 437c, subds. (a), (o)(1), (2), (p)(2).) Defendant could do this by advancing evidence that either negated the claim or element, showed that plaintiff had insufficient evidence to establish it, or established the complete defense. (*Id*., subd. (p)(2).) Defendant bore the burden of persuading the court to this effect. [Citation.] In determining whether this burden was met, we view the evidence in the light most favorable to plaintiff, as the nonmoving party, liberally construing her evidence while strictly scrutinizing defendant's. [Citations.]" (*Martinez v. Chippewa Enterprises, Inc.* (2004) 121 Cal.App.4th 1179, 1184.)

## No Duty to Warn or Remedy Dangerous Condition

Mossman contends the physical characteristics of the bus stop created a dangerous condition by inviting pedestrians to walk southbound on the western side of Sepulveda, and as a result, the defendants had a duty to install signs and a barrier prohibiting pedestrian traffic beyond the bus stop. We agree with the trial court that the dangers of Sepulveda Boulevard were open and obvious.

"As in a general negligence cause of action, a plaintiff bringing an action for premises liability based on a negligence theory must plead and prove that the defendant breached a duty of care owed to the plaintiff that proximately caused injury and damages. (*Paz v. State of California* (2000) 22 Cal.4th 550, 559.) Those who own, possess, or control property generally have a duty to exercise ordinary care in managing the property in order to avoid exposing others to an unreasonable risk of harm. (*Alcaraz v. Vece* (1997) 14 Cal.4th 1149, 1156.)" (*Annocki v. Peterson Enterprises, LLC* (2014) 232 Cal.App.4th 32, 37 (*Annocki*).)

Whether the defendants had a duty to install signs and barriers is a question of law for this court to decide. (*Alcaraz v. Vece* (1997) 14 Cal.4th 1149, 1162, fn. 4.) In

determining whether a duty exists, the primary considerations are "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland v. Christian* (1968) 69 Cal.2d 108, 113.)

"Although a possessor of land must exercise reasonable care to make the premises safe or to warn regarding dangerous conditions or activities the possessor knows of or could readily discover, 'there is no obligation to protect the invitee against dangers which are known to him, or which are so apparent that he may reasonably be expected to discover them and be fully able to look out for himself.' [Citations.]" (*Lucas v. George T. R. Murai Farms, Inc.* (1993) 15 Cal.App.4th 1578, 1590.)

"In most instances, where there is no control over the premises, there is no duty to exercise reasonable care to prevent injury. (*Hamilton v. Gage Bowl, Inc.* (1992) 6 Cal.App.4th 1706, 1711.) . . . Thus, usually a landowner has no duty to prevent injury on adjacent property. (See *Owens v. Kings Supermarket* (1988) 198 Cal.App.3d 379, 386 [no duty to customer struck by motorist on adjacent public street]; *Hamilton v. Gage Bowl, Inc.*, *supra*, 6 Cal.App.4th at p. 1714 [owner of parking lot not liable to customer injured by sign which fell from adjacent building].) Similarly, an adjacent landowner has no duty to warn of dangers outside of his or her property if the owner did not create the danger. (*Seaber v. Hotel Del Coronado* (1991) 1 Cal.App.4th 481, 487-488 [hotel not liable for failure to warn patron who was killed crossing adjacent street to use parking lot frequented by guests].)" (*Annocki*, *supra*, 232 Cal.App.4th at p. 37.)

"But there are exceptions to the general principle. In *Barnes v. Black* [(1999)] 71 Cal.App.4th 1473, a child who was killed by an automobile when the tricycle he was riding veered off the sidewalk, rolled down the steep driveway of the apartment complex where he lived into the street and into the path of an oncoming car. (*Id*. at p. 1476.) The

8

court found the configuration of the driveway, which was adjacent to a children's play area, made it foreseeable for a child to be ejected from the premises into the street. (*Id*. at pp. 1476, 1479.) *Barnes* observed that '[a] landowner's duty of care to avoid exposing others to a risk of injury is not limited to injuries that occur on premises owned or controlled by the landowner. Rather, the duty of care encompasses a duty to avoid exposing persons to risks of injury that occur off site if the landowner's property is maintained in such a manner as to expose persons to an unreasonable risk of injury offsite. [Citations.]' (*Id*. at pp. 1478-1479.)" (*Annocki*, *supra*, 232 Cal.App.4th at p. 38.)

"In *McGarvey v. Pacific Gas & Elec. Co*. (1971) 18 Cal.App.3d 555, a motorist was injured when an employee of the defendant made a U-turn to avoid a difficult parking situation created by the defendant's employees. Although it rejected the plaintiff's theory that the employer was negligent because it had created a dangerous condition when it failed to provide adequate parking for its employees, the court stated: 'We need not, and do not, fix an inflexible rule by this decision. Circumstances can be conceived where an occupier of land could create automobile snarl-ups on his premises or unleash forces onto public streets the nature of which would require a court to say that injury to third persons was foreseeable and that a duty of care existed and was breached.' (*Id* at. p. 562.)" (*Annocki*, *supra*, 232 Cal.App.4th at p. 38.)

"'[A]lthough the obviousness of a danger may obviate the duty to *warn* of its existence, if it is *foreseeable* that the danger may cause injury despite the fact that it is obvious (e.g., when necessity requires persons to encounter it), there may be a duty to *remedy* the danger, and the breach of that duty may in turn form the basis for liability . . . .' [Citations.]" (*Martinez v. Chippewa Enterprises, Inc.*, *supra*, 121 Cal.App.4th at p. 1184.) "The existence of a dangerous condition is ordinarily a question of fact; however, it can be decided as a matter of law if reasonable minds can come to only one conclusion concerning the issue." (*City of San Diego v. Superior Court* (2006) 137 Cal.App.4th 21, 28.)

In this case, the evidence suggested a pedestrian standing at the southwest corner of the intersection could see the sidewalk was blocked by a retaining wall. Mossman's

9

traffic expert noted that a pedestrian's visibility of the sidewalk was impeded by the retaining wall, which means a pedestrian standing on the corner could see the retaining wall. Even if the pedestrian did not notice the end of the 40-foot sidewalk, he or she would not need to walk the full 40 feet before it became clear. The dangers of walking alongside or across traffic on Sepulveda Boulevard were open and obvious as a matter of law. It is not foreseeable that a pedestrian will walk in the roadway or attempt to cross Sepulveda Boulevard between intersections, without a crosswalk, in the dark. Nothing about the physical characteristics of the bus stop required Mossman to step off the sidewalk into the road or continue 300 feet to cross the road at an unmarked, unlit point, rather than return to the marked crosswalk at the intersection. The suggestion that the mere sight of a narrow stone pathway would lead a pedestrian to step into the roadway, continue 300 feet south of the intersection, and attempt to cross a heavily-trafficked street, is an unreasonable inference from the evidence as a matter of law. Mossman was not injured by walking southbound on Sepulveda. He walked 300 feet before attempting to cross. The defendants had no duty to warn Mossman of the obvious danger of walking in the roadway or crossing Sepulveda Boulevard outside of a crosswalk.

## DISPOSITION

The judgment is affirmed. Respondents The J. Paul Getty Trust and Kiewit Infrastructure West Co. are awarded their costs on appeal.

KRIEGLER, J.

We concur:

TURNER, P. J.                    KUMAR, J. *

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11